IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 2 2 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BETTY LASTER, )
In her own right, and as next )
friend of her grandson, )
T.L., )
4524 Sixth Place, NE )
Washington, D.C. 20017 )
)
T.L., a minor, )
By his grandmother and next friend, )
Betty Laster, )
4524 Sixth Place, NE )
Washington, D.C. 20017, )
)
CHANDA ALSTON, )
In her own right, and as next )
friend of her daughter, C.A. )
1911 Savannah Street, SE )
Washington, D.C. 20020 )
)
C.A., a minor, )
By her mother and next friend, )
Chanda Alston, )
1911 Savannah Street, SE )
Washington, D.C. 20020 )
)
LESLIE T. JACKSON, )
In her own right, and as next )
friend of her son, )
A.J.P., )
235 Oglethorpe Street, NW )
Washington, D.C. 20011, )
)
A.J.P., a minor, )
By his mother and next friend, )
Leslie T. Jackson )
235 Oglethorpe Street, NW )
Washington, D.C. 20011 )
)

CASE NUMBER 1:05CV01875

JUDGE: Ricardo M. Urbina

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 09/22/2005

|  |  |
|---|---|
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DISTRICT OF COLUMBIA, | ) |
| A municipal corporation, | ) |
| John A. Wilson Building | ) |
| 1350 Pennsylvania Ave., NW | ) |
| Washington, D.C. 20004, | ) |
|  | ) |
| CLIFFORD JANEY, | ) |
| In his official capacity as, | ) |
| Superintendent, | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol Street, NE | ) |
| Washington, D.C.20002, | ) |
|  | ) |
| Defendants. | ) |

**COMPLAINT**
**(for Stay Put, declaratory, injunctive and compensatory education relief, and attorney's fees)**

**INTRODUCTION**

This civil action is brought pursuant to 42 U.S.C. § 1983 to enforce Plaintiffs' rights under the Individuals with Disabilities Education Act, as amended, 20 U.S.C.§§1400 et seq ("IDEA").

IDEA obligates the D.C. Public School System ("DCPS") to implement an Individualized Education Program ("IEP") that has been developed in accordance with 20 U.S.C. § 1414 and to make an educational placement of that student, based on his or her IEP in an appropriate program/ school. IDEA recognizes that children with disabilities require a wide range of placements, depending on the severity or intensity of their individual needs, and so mandates that DCPS make available a continuum of programs/placements, ranging from those that are carried out in the regular education classroom—the

2

least restrictive setting—through those carried out in specialized schools and those carried out in residential treatment facilities or hospitals.

IDEA provides for an administrative "due process" hearing, to which a parent can bring any dispute over a child's education. IDEA requires that pending that hearing or any judicial proceeding, a child remain in his or her "then current educational placement," also referred to as the child's "Stay Put" placement. The Stay Put provision protects the due process rights of the parent and child, by maintaining the placement that was last agreed to by the parent and DCPS. Where the "then current placement" is no longer available, IDEA requires that a placement equivalent to that placement be provided.

Plaintiffs bring this action to enforce their children's rights to remain in their Stay Put placement, pending resolution of their disputes with DCPS through the administrative process and any appeal thereof.

## I.
## JURISDICTION

1. This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(3), 29 U.S.C. § 794, 42 U.S.C.§ 1983, 28 U.S.C. §§ 2201, 2202, 1331, 1333 and 1343. Venue lies in the District of Columbia pursuant to 28 U.S.C. §1391.

## II.
## PARTIES

2. Plaintiff T.L. is a sixteen-year old resident of the District of Columbia, is a child with a disability within the meaning of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, et seq., (IDEA), and is a handicapped person within the meaning of Section 504 of the



Rehabilitation Act of 1973, 29 U.S.C. § 794, (Section 504). This action is brought on his behalf by his grandmother and legal custodian, Mrs. Betty Laster.

3. Plaintiff Betty Laster is a resident of the District of Columbia, and is the grandmother and legal custodian of T.L. She brings this action on her own behalf and on behalf of her grandson.

4. Plaintiff A.J.P. is a four-year old resident of the District of Columbia, is a child with a disability within the meaning of IDEA and a handicapped person within the meaning of Section 504. This action is brought on his behalf by his mother, Mrs. Leslie T. Jackson.

5. Plaintiff Leslie T. Jackson is a resident of the District of Columbia, and is the mother of A.J.P. She brings this action on her own behalf and on behalf of her son.

6. Plaintiff C.A. is a thirteen-year old resident of the District of Columbia, is a child with a disability within the meaning of IDEA and a handicapped person within the meaning of Section 504. This action is brought on her behalf by her mother, Mrs. Chanda Alston.

7. Plaintiff Chanda Alston is a resident of the District of Columbia and is the mother of C.A. She brings this action on her own behalf and on behalf of her daughter.

8. Defendant District of Columbia ["DC"] is a municipal corporation responsible for ensuring that DC agencies that receive federal funds

comply with their obligations under District and federal law, including IDEA, Section 504 and their implementing regulations.

9. Defendant Clifford Janey is Superintendent of DCPS, which receives Federal educational funds and receives funding under IDEA. As superintendent Defendant Janey is responsible for implementing policies, plans and procedures that conform with the requirements of IDEA and Section 504, as well as federal and municipal regulations implementing those statutes.

## III
## FACTUAL ALLEGATIONS

### A. Stay Put Rights of T.L. and Mrs. Laster

10. T.L. was determined eligible for special education services, as a student with a "Specific Learning Disability", under 20 U.S.C. § 1401(30) in First Grade.

11. In October 2003, when T.L. was in the Ninth Grade, DCPS placed T.L. at Kingsbury Day School [KDS].

12. KDS is a private special education school for students with severe specific learning disabilities. It provides specialized instructional programming for children with Reading and Writing disorders and has on-site Speech and Occupational therapists trained in working with children with Speech and perceptual disorders.

13. DCPS issued a notice of placement classifying T.L. as a student with

5

a specific learning disability and placing T.L. at KDS in December 2003.

14. On July 28, 2005, DCPS convened a meeting at KDS at which it developed a document purporting to be an IEP. DCPS informed Mrs. Laster that it was changing T.L.'s classification from "learning disabled" to a primary classification of "learning disabled" with a secondary classification as "emotionally disturbed." DCPS produced a notice, placing T.L. at D. C. Alternative Learning Academy [DCALA].

15. DCPS produced no evaluation at the July 2005 meeting that found T.L. to be emotionally disturbed.

16. DCALA is a public contract school that treats students with behavioral and emotional problems.

18. Mrs. Laster informed DCPS that she disagreed with the so-called IEP, disagreed with DCPS' change of T.L.'s classification and disagreed with DCPS' placement of T.L. at DCALA.

19. Mrs. Laster asserted her right to maintain T.L. at KDS, as his stay put placement, pursuant to IDEA.

20. DCPS declined to maintain his placement at KDS and declined to agree to an equivalent interim placement at a private special education school that primarily provides educational programming primarily for students with learning disorders and is capable of providing the specialized instruction in Reading and Writing that T.L. requires.

21. Mrs. Laster filed a formal due process complaint with the DCPS Student Hearing Office on September 9, 2005.

22. DCPS violated its obligations, and the rights of T.L. and Mrs. Laster under the Stay Put provision of IDEA, 20 U.S.C. § 1415(j).

23. D.C. Law requires that D.C. provide a child with a disability specialized instruction and related services through age 22.

24. T.L is a student with severe learning disorders who will remain eligible fore specialized instruction and related services for six years to come.

25. This dispute is capable of repetition, without resolution, over the course of the remaining years that T.L. is eligible to receive specialized instruction and related services.

### B. Stay Put Rights of A.J.P. and Mrs. Jackson

26. A.J.P. was determined eligible for special education services in August 2004 as a child with Developmental Delays, in accordance with 20 USC § 1401(3)(B).

27. In that same month, DCPS developed an IEP for A.J.P. and placed him in an inclusion nursery school program, i.e. a program in a general education classroom with non-disabled students, at Stoddert ES.

28. In March 2005, DCPS issued a notice changing A.J.P.'s placement to a categorical special education program that is a program for special education students with a variety of disabilities, at Garrison ES.

29. Following an administrative due process hearing, an impartial hearing officer issued a Hearing Officer's Determination [HOD] on May

11, 2005, in which he ordered DCPS to maintain Stoddert ES as A.J.P.'s Stay Put placement.

30. On August 10, 2005, DCPS developed a document purporting to be an IEP, re-classified A.J.P., changing his classification from "Developmentally Delayed," to "Autistic," and issued a notice placing him in the citywide Autism program at Bernard ES, that is, in a highly restrictive program which is only for special education students who are autistic.

31. No evaluation of A.J.P. has found that he is "autistic."

32. Mrs. Jackson did not agree to the so-called IEP, to DCPS' re-classification of her son, or to DCPS' placement of her son at the Bernard Autism program.

33. Mrs. Jackson asserted her Stay Put rights, both pursuant to the HOD and to 20 U.S.C. § 1415(j).

34. DCPS refused to permit A.J.P. to return to Stoddert ES, and declined to come to agreement with Mrs. Jackson on an equivalent placement for A.J.P. in an inclusion program with non-disabled students that might serve as A.J.P.'s Stay Put program and placement.

35. A.J.P. is four years old and will be eligible for special education services for some eighteen years.

36. This dispute is capable of repetition without resolution.

### C. Stay Put Rights of C.A. and Mrs. Alston

8

37. C.A. is a student who has been determined eligible for special education services as "Multiply Handicapped." In 2002, C.A. was placed by DCPS at the Grafton School, a residential placement in Rockville, MD.

38. In Spring 2003, C.A.'s Grafton/DCPS IEP Team determined that C.A. required both a residential placement at Grafton and a day instructional program at Cabin John MS, in a "School/Community Based" special education program there.

39. Although DCPS approved the Spring 2003 IEP, it failed to submit to the Montgomery County Public School System the payment authorizations that were required for C.A. to register at the Cabin John program. When Mrs. Alston and the Grafton IEP Team pursued the matter of payment, DCPS issued a notice of placement, re-classifying C.A. and changing her placement to a D.C. public school program for the mentally retarded.

40.. On August 22, 2003, an impartial hearing officer upheld the Grafton IEP Team's determination and ordered DCPS to fund C.A.'s placement both at Grafton and at Cabin John.

41. Thereafter, DCPS informed Grafton staff that it would submit the requisite payment and other authorizations to the Montgomery County Public School System so that C.A. could register at Cabin John. DCPS delayed in the submission of one form or another, until Spring Semester 2005, with the result that C.A. lost approximately two years of instruction in the day program that her IEP had identified as necessary

in Spring 2003.

42. In Summer 2005, Grafton staff learned that DCPS had failed to submit the payment and other authorizations required by the Montgomery County Public School System in order for C.A. to register at Cabin John for the 2005-2006 school year.

43. Grafton staff communicated with DCPS requesting the necessary authorizations.

44. DCPS has failed to provide those authorizations, with the result that C.A. has not been able to register for Cabin John.

45. Mrs. Alston filed a due process complaint on September 13, 2005 with the DCPS Student Hearing Office, asserting her Stay Put right to maintain C.A. at Cabin John and Grafton both pursuant to the August 2003 Hearing Officer's Determination and pursuant to 20 USC § 1415(j).

### D. DCPS Custom and Practice

46. Mrs. Laster and Mrs. Jackson communicated, in writing, to senior officers of the DCPS Special Education Division and senior officials of DCPS, in both instances requesting that DCPS maintain her child in the student's then current placement or agree to an equivalent placement.

47. Mrs. Laster and Mrs. Jackson called and spoke to senior officers of the Special Education Division, requesting that DCPS maintain their children in their then current placements or agree to an equivalent

10

placement.

48. Mrs. Laster received no response to her inquiries.

49. Mrs. Jackson was told that DCPS would not agree to a Stay Put placement.

50. In the days following Mrs. Laster's and Mrs. Jackson's letters to and conversations with DCPS personnel, DCPS special education buses arrived to transport their children to the schools that each had rejected : the very placements that each was challenging in her dispute with DCPS.

51 DCPS has been found, in a class action suit before this Court, liable for violating students' rights to timely due process hearings.

52. The DCPS Student Hearing Office has no mechanism for determining Stay Put disputes in advance of the due process hearing on the merits of the parent's due process complaint.

53. All the adult Plaintiffs asserted their child's Stay Put rights in their due process complaints and requested immediate action by the Chief Hearing Officer to enforce those rights.

54. None of the Plaintiffs has received any response from the Student Hearing Office or DCPS.

55. IDEA permits DCPS 75 days within which to convene a due process hearing. No hearing is offered within the first 30 days of that period.

56. D.C. Board of Education regulation prohibit a D.C. school principal from admitting to his school a child who lives within the school's boundaries if the student has been transferred by the Special Education

Division to another school.

57. D. C. law makes it a criminal offense for a parent to fail to send his or her child to school.

58. D.C. law, D. C. Board of Education regulations, DCPS practices and customs effectively leave a parent with a choice between keeping her child out of school ---and suffer potential criminal penalties---or acquiescing to the very DCPS placement that she believes will not provide her child with the specialized instruction and related services the child needs in order to make progress.

### E. Repetitious Violations of Plaintiffs' IDEA Rights

59. Under DC law, a student is eligible for special education services until the age of 22.

60. The minor plaintiffs will remain eligible for special education services for six through eighteen years.

61. Plaintiffs previously have been forced to resort to due process hearings or to this Court to enforce their IDEA rights.

62. Mrs. Laster has been forced to bring two cases before this Court, as well as three due process complaints, in order to preserve T.L.'s rights.

63. Mrs. Alston has been forced to bring two cases before this Court and to bring four due process complaints, to preserve the rights of C.A.

64. Mrs. Jackson has been forced to file two due process complaints to preserve the rights of A.J.P.

65. It is foreseeable that Plaintiffs will have to resort to due process hearings to enforce their rights over the next six to eighteen years that the minor Plaintiffs remain eligible for special education services.

66. It is foreseeable that DCPS will deny or deprive them of their Stay Put rights in the future.

## IV
## THE STATUTE

67. IDEA obligates DCPS to comprehensively evaluate a child with disabilities to determine what specialized instruction, related services and supplemental aids the student requires in order to obtain some meaningful benefit from his education. 20 U.S.C. §1412(a)(7), 1414(a)-(c). IDEA requires that an IEP be created that addresses the educational needs demonstrated by the child's evaluations, and entitles a child to specialized instruction and related services provided in an educational program/placement that is based on his IEP. 20 U.S.C. ,§§ 1401(9), 1414(d).

68. IDEA obligates the D.C. Public School System ("DCPS") to implement an Individualized Education Program ("IEP") that has been developed in accordance with 20 U.S.C. § 1414 and to make an educational placement of that student, based on his or her IEP in an appropriate program/ school, 20 U. S.C. §§ 1401(15), 1414(d); 34 C.F.R. §§ 300.551---300.554. IDEA recognizes that children with disabilities will require a wide range of placements, depending on the severity or intensity of their

13

individual needs, and requires that DCPS have available a continuum of programs/placements, ranging from those that are carried out in the regular education classroom—the least restrictive setting—through those carried out in classrooms containing only children with disabilities, to programs that are carried out in residential treatment facilities or hospitals, where children are instructed only with other disabled children, in settings outside the school and community . 20 U.S.C. § § 1401(29), 1412(a)(5).

69. IDEA provides for an administrative hearing, a "due process" hearing, to which a parent can bring any dispute over a child's evaluation, IEP, or placement. 20 U.S.C. §1415(b)(6). IDEA requires that during the pendency of any administrative or judicial proceeding regarding a complaint between the parent and the school district, a child remain in his or her "then current educational placement." 20 U.S.C. §1415(j); 34 C.F.R. § 300.514(a). The student's "then current educational placement" is also known as the student's "Stay Put placement." The purpose of the Stay Put provision is to protect the due process rights of the parent and child, by preserving the placement that was the most recent placement agreed upon by both the parent and DCPS. Where for one reason or another, the "then current placement" is not available, IDEA requires that a placement equivalent to the last agreed upon placement be provided to serve as the Stay Put placement.

## COUNT I
### DEFENDANTS VIOLATED PLAINTIFFS' RIGHTS UNDER THE STAY PUT PROVISION OF IDEA

70. Paragraphs 1 through 69 are re-alleged and incorporated by reference.

71. Defendants violated Plaintiffs' rights under 20 U.S.C. § 1415(j).

## COUNT II
### DEFENDANTS BY CUSTOM OR PRACTICE VIOLATE RIGHTS UNDER THE STAY PUT PROVISION OF IDEA

72. Paragraphs 1 through 69 are re-alleged and incorporated by reference.

73. Defendants by custom and practice violate the rights of children with disabilities and their parents under 20 U.S.C. § 1415(j).

## COUNT III
### VIOLATION OF SECTION 504

74. Paragraphs 1 through 69 are re-alleged and incorporated by reference.

75. Defendants discriminated against Plaintiffs in violation of Section 504.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment for Plaintiffs and that:

1) This Court issue permanent injunctive relief enjoining Defendants from violating Plaintiffs' rights under the Stay Put provision of IDEA;

2) This Court issue permanent injunctive relief requiring Defendants to maintain the minor Plaintiffs' then current placement upon notice that the parent will file a due process complaint, including requiring Defendants to complete all necessary authorizations and to make all necessary payments that may be required to maintain the minor Plaintiffs' then current placement;

3) This Court issue permanent injunctive relief requiring that, where the minor Plaintiffs' then current placement no longer exists or is otherwise unavailable for reasons beyond Defendants' control, Defendants enter into agreement with Plaintiffs upon an alternative Stay Put placement that provides the minor Plaintiffs with a setting, a level of intensity, specialized instruction, related services and supplemental aids that are equivalent to those provided at the child's then current educational placement;

4) This Court order Defendants to fund or provide compensatory tutorial and related services to compensate each of the minor Plaintiffs for the educational services each child was deprived of as a result of Defendants' violation of their Stay Put rights;

5) This Court order Defendants to pay Plaintiffs' reasonable attorney's fees and expenses; and

6) This Court grant Plaintiffs such other relief as the Court may deem just or reasonable.

Respectfully submitted,

*/s/ Karen D. Alvarez*

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd, N.W.
Washington, D.C. 20007
(202) 333-8553
202-333-1546(Fax)

September 14, 2005