UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BETTY LASTER, *et al.*, ) ) Plaintiffs, ) ) v. ) ) DISTRICT OF COLUMBIA, *et al.*, ) ) Defendants. ) | Civil Action No. 05-1875 (RMU) |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

The Defendants, by counsel and pursuant to the Court's directive this morning, hereby respond to the Plaintiffs' Motion for Temporary Restraining Order, filed yesterday afternoon ("Motion"). For the reasons set forth below, there is no merit whatever to the Motion and, based on the content of the Complaint itself, the action herein should be dismissed forthwith.

**PRELIMINARY STATEMENT**

The Complaint states (at p. 2) that this action "is brought pursuant to 42 U.S.C. § 1983 to enforce Plaintiffs' rights under the Individuals with Disabilities Education Act, as amended, 20 U.S.C. §§1400 et seq ("IDEA"). The "right" sought to be vindicated is that conveyed by 20 U.S.C. § 1415(j) – the so-called "stay put" provision of the statute. That section provides, in relevant part, that

> . . . during the pendency of [administrative due process hearings under Section 1415] . . . , the child shall remain in the then-current educational placement of the child.

Thus, where a student has been placed by DCPS at school A, where DCPS subsequently revises the student's IEP and changes the student's placement to School B, and where the

student challenges the new IEP and placement by requesting a due process hearing before an administrative Hearing Officer pursuant to 20 U.S.C. §1415(f), the student is entitled to remain at School A until the conclusion of the due process proceedings.

Against this background, the salient facts concerning the three student should be kept clearly in mind, for each represents completely distinct circumstances.

**C.A.** is a special education student who has a residential placement in Rockville, MD (paid for by DCPS), and also attends a special education day instructional program at Cabin John Middle School. Pursuant to an agreement between DCPS and Montgomery County Schools, DCPS pays that school system for the student's attendance at Cabin John. Because of certain confusion, the authorizations necessary to be transmitted to Montgomery County by DCPS for the 2005-2006 school year were delayed.

This morning, however, those documents were transmitted to Montgomery County, the responsible county officials have confirmed their receipt, and it is DCPS' understanding that the student will be able to attend Cabin John beginning Monday. See Declaration of Judith Smith, appended hereto as Attachment 1. While Montgomery County's arrangements for transportation of the student may not be as immediately available, communications have occurred between DCPS and Grafton, to determine whether Grafton could provide transportation in the interim. Id.

**T.L**. is a special education student whose earlier placement was at Kingsbury Day School. A new IEP and placement for the student were arrived at on July 28, 2005. Kingsbury stated at that time that the student could not return for the 2005-2006 school year; that determination was later reconfirmed to the student's grandparent and to plaintiffs' counsel. See Attachments 2 and 3 hereto. On July 28, 2005, DCPS also issued

2

a notice of placement for the student at DCALA-NE. On September 9, 2005, the student's grandparent filed a request for a due process hearing, challenging the IEP and placement – an adjudicative process now proceeding.

**A.J.P.** is a special education student whose earlier placement was at Stoddert Elementary School. At the end of the last school year, the program that the student attended at Stoddert was discontinued and is no longer offered there. On August 10, 2005, DCPS issued a new IEP, and placed the student at Barnard Elementary School. On September 13, 2005, the student's representative filed a request for a due process hearing, challenging the IEP and placement – an adjudicative process now proceeding.

## ARGUMENT

Under the familiar four-factor analysis of applications for interlocutory relief, Washington Metropolitan Area Transit Comm'n v. Holiday Tours, 559 F.2d 841 (D.C.Cir. 1977), Katz v. Georgetown University, 246 F.3d 685 (D.C.Cir. 2001), plaintiffs' motion must fail. Each of the four prerequisites to such relief is lacking here.

**I.  Plaintiffs Have Failed to Show a Likelihood of Success on the Merits.**

    **A.  There is no legal basis for the Court's jurisdiction in this case.**

        **1.  The Plaintiffs' have not made the necessary showings to support an action under Section 1983 of the Civil Rights Act.**

The complaint states that this case is one "brought pursuant to 42 U.S.C. §1983 to enforce Plaintiffs' [stay put] rights" under IDEA. Complaint, p. 2. While "IDEA violations can be the predicate for a §1983 claim based on those statutory violations," Johnson v. District of Columbia, 190 F.Supp.2d 34, 46-47 (D.D.C. 2002), the Court in Walker v. District of Columbia, 157 F.Supp.2d 11, 30 (D.D.C.), adopted a four-part test for such claims, requiring plaintiffs to show:

3

> (1) that the defendant violated IDEA; (2) that "exceptional circumstances" exist, such that the conduct of the defendant causing the IDEA violation was "persistently egregious and prevented or frustrated [plaintiff] from securing equitable relief under the IDEA"; (3) that the "District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations"; and (4) that "normal remedies offered under the IDEA -specifically, compensatory education -are inadequate to compensate [plaintiff] for the harm that he [or she] allegedly has suffered."

R.S. v. District of Columbia, 292 F.Supp.2d 23, 28-29 (D.D.C. 2003) (quoting Walker, supra). See also Jackson v. District of Columbia, Civil No. 02-968, Memorandum Opinion at 8-9 (D.D.C. Sept. 21, 2003).

In this case, at least as to T.L. and A.J.P., the first element – a violation of IDEA – has plainly not been shown. Those students' earlier placement *could not have been preserved after the end of the last school year.* Kingsbury refused to take T.L. back, and A.J.P.'s program was no longer being offered at his school.

Neither does the complaint meet the second requirement: a demonstration of "exceptional circumstances," such that the conduct of DCPS was "persistently egregious and prevented or frustrated [the plaintiffs] from securing equitable relief under the IDEA." Nothing, other than asserted failures of DCPS to respond to certain communications from the Plaintiffs is identified.

Nor is there any showing, third, that there is a DCPS "custom or practice" of violating parties' "stay put" entitlements. What DCPS custom or practice, for example, could be said to be responsible for Kingsbury's independent decision to reject T.L., thus making his remaining there impossible?

And finally, as to the fourth element, there has been no showing that normal remedies under IDEA – e.g., compensatory education, if warranted – are inadequate to

4

offset any asserted harm. Indeed, the complaint's own prayer for relief (p. 16) asks for just such relief.

At bottom, the complaint patches together three completely dissimilar factual circumstances and seeks to manufacture some "customs and practices" said to be common to all. Complaint, paras. 46-58. But with one exception, all of the expressions of "customs and practices" are merely factual statements as to what is said to have happened to *these* individual plaintiffs (e.g., no DCPS response to asserted inquiries by the plaintiffs). And the one generality offered ("The DCPS Student Hearing Office has no mechanism for determining Stay Put disputes in advance of the due process hearing on the merits of the parent's due process complaint," Complaint, para. 52) is without significance here: viewed most favorably, what that suggests is an impermissible *absence* of a "custom and practice" – one that, notably, has not been shown to have been the cause of any identified plaintiff injury.

### 2. **Other statutes cited in the complaint do not support this action.**

Two other statutes appear in the complaint's jurisdictional recitation (at p. 3). Neither is applicable here. While the plaintiffs cite section 1415(i)(3) of IDEA, that provision deals with awards of attorneys' fees. Moreover, while the complaint further refers to 29 U.S.C. §794 (the so-called "Section 504" of the Rehabilitation Act of 1973), that provision has been directly held inapplicable in cases asserting IDEA violations such as those here. R.S. v. District of Columbia, 292 F.Supp.2d 23, 27-28 (D.D.C. 2003), and cases there cited.

5

### B. The Plaintiffs have not exhausted their administrative remedies.

As indicated in the complaint and the Motion, the plaintiffs have individually challenged their new IEPs and placements at DCPS through a due process hearing request – proceedings specifically provided for in IDEA, and ones that will consider and resolve just the issues raised before the Court in this action. To that extent, the Plaintiffs' suit(s) here are premature, and an obvious effort to end run the applicable administrative procedures. Indeed, the Plaintiffs have inundated the Court with much information already presented to DCPS in IEP meetings earlier this Summer, and which will undoubtedly be submitted in the forthcoming administrative hearings in support of precisely the same relief the Plaintiffs ask this Court now to grant.

The courts lack jurisdiction in such a situation. Reiter v. Cooper, 507 U.S. 258, 269 (1993); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938); Maririo v. Dickinson, 56 F.Supp.2d 74 (D.D.C. 1999); Cossio v. Hawk, 1998 U.S.Dist.LEXIS 2433 (D.D.C. 1998).

As to T.L. and A.J.P., the Motion recognizes that their former school placements are in fact no longer available for the students. And what is asked of the Court is to summarily order – without any consideration by expert educational personnel charged by statute to evaluate and decide such matters in the first instance – placements other than the students' earlier ones or those DCPS has subsequently specified.

While in appropriate cases, it may be that a Court, after a review of the record of the administrative proceeding in a proper "appeal" under IDEA, disagrees with a Hearing Officer's conclusion that a particular student's placement by DCPS is appropriate. However, with due respect, it is entirely inappropriate for the Court to consider such

6

matters in the context of a request for summary injunctive relief, where information and argument on the educational wisdom of the plaintiffs' disagreement with DCPS is considered by the Court in the first instance.[1]

### C. The claim concerning C.A. is moot.

In the complaint and the Motion, it is argued that DCPS' failure to have provided the Montgomery County Public School System necessary authorizations to permit C.A. to attend classes as Cabin John. Motion, paras. 42-45. As shown in the attached declaration of Judith Smith, that documentation has now been completed, and C.A. is able to attend Cabin John. With respect to this plaintiff, therefore, there is no longer even an arguable case or controversy before the Court.

### D. At to T.L. and A.J.P., the relief requested would alter, not preserve, the status quo.

That injunctive relief pendente lite is properly intended to preserve the status quo requires no citation. In this case, however, the relief requested at least for T.L. and A.J.P. would affirmatively *change* the status quo. As shown earlier, T.L.'s prior placement was Kingsbury Day School (a private school), which refuses to accept him back; as stated by Kingsbury, "Neither [the student] nor you as his grandparent . . . [nor] his counsel will be allowed on the school grounds at any time during the upcoming school year." See Attachment 3. DCPS' announced placement is at DCALA. But the plaintiffs request this

---

[1] Where there is judicial review of administrative determinations under IDEA, courts are to avoid "substitute[ing] their own notions of sound educational policy for those of the school authorities which they review." Board of Educ.of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons v. Smith, 829 F.Supp. 414, 418 (D.D.C. 1993). This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. Rowley, supra, 458 U.S. at 207-08.

7

Court to order placement *at a third location*, High Road Academy. Motion, proposed Order, p. 1.

Similarly as to A.J.P., his earlier placement was at Stoddert, which no longer offers the program the student attended. DCPS' announced placement is Barnard ES. But the plaintiffs request this Court to order placement *at a third (unspecified) location*, a "pre-school of Mrs. Jackson's choice." Motion, proposed Order, p. 2.

To the extent the Motion seeks other than to preserve the status quo, it is plainly improper, and beyond the jurisdiction of the Court properly to grant.

**II.  Plaintiffs have declined to show either (a) that the plaintiffs will incur irreparable injury if interlocutory relief is denied, (b) that the balance of equities does not favor the Defendants, or (c) that the public interest favors a grant of the Plaintiffs' requested relief.**

The Plaintiffs offer no showings whatever on three of the four elements, arguing no such showings are necessary since "[t]he Stay Put provision of IDEA is an automatic or mandatory injunction." Motion, p. 13. In the Plaintiffs' view, "[o]nce the court ascertains the student's stay-put placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief." Id..

The Plaintiffs' assertions are at best circuitous, and at worst, meaningless in this case. Even if the general principle asserted were true – that once a "then-current placement" under the statute is ascertained, the Court needs no other prerequisite to its jurisdiction to enforce that placement – the fact is here that the earlier ("then-current") placements for T.L. and A.J.P *cannot be preserved*. Kingsbury will not accept T.L, and the A.J.P.'s program at Stoddert no longer exists. And the Plaintiffs directly acknowledge both circumstances.

Instead, what the Plaintiffs here request – what is specifically set out in the Plaintiffs' proposed Order – is not an enforcement of the earlier placements, but a declaration of *new* placements: for T.L., High Road Academy, where he has *never* attended, and for A.J.P., an unidentified location of his mother's choosing. *Neither* has *ever* been the students' respective placements. And the Plaintiffs are entitled to no excuse from injunctive relief showings based on precedents that apply to enforcement of existing, ascertained prior locations of the students involved.[2]

## CONCLUSION

The Plaintiffs have failed entirely to support a grant of the extraordinary relief they request. Because this is not a case where, as even the Plaintiffs acknowledge, the statutory "then-current placement" is able to be enforced, the Plaintiffs are not excused

---

[2] While, in light of the foregoing, the Defendants will not respond in detail to the citations at page 13 of the Motion. It should be noted, however, that the principal case relied on, Zvi D. v. Ambach, 6943 F.2d 904 (2d Cir. 1982), is factually inapposite.

> In Zvi D., the parent of Zvi, a child with minimal brain dysfunction, enrolled Zvi in a private school and requested evaluation by the school district and board of education to determine Zvi's eligibility to receive public funding for his private schooling. Zvi, 694 F.2d at 907. The school district recommended a free appropriate public education placement for Zvi and his parent contested this initial placement. Id. Before the appropriateness of the school district's recommendation could be reviewed, the parties came to a settlement agreement by which the school district would reimburse the parents for Zvi's tuition at the private school for a definite time period and that a review would occur at the end of the time period with a view toward placing Zvi in an appropriate public program. Id. At the end of this time period, the school district placed Zvi in a public school program and Zvi's parent challenged this placement, maintained Zvi at the private school, and sought to enjoin the Board of Education to fund Zvi's private schooling. Id. at 908. The Second Circuit held that Zvi's parent did not establish that the private school was Zvi's "current educational placement" within the meaning of the stay-put clause. Id. The court found that the stipulation between the parents did not constitute a public agency placement of Zvi nor did the school district at any time determine that the parent's private placement of Zvi was appropriate, and therefore, the school district's placement at the public school was the initial placement and appropriate stay-put placement for Zvi. Id. In addition, the court noted that because the agreement expressly limited the school district's financial responsibility, the private school was not the child's current educational placement within the meaning of the stay-put provision. Id.

Peter G. v. Chicago Pub. Sch. Dist. No. 299, 2002 U.S.Dist.LEXIS 7716 *13 (N.D.Ill. 2002). See also Leonard v. McKenzie, 869 F.2d 1558, 1564 (D.C.Cir. 1989).

from meeting the usual showing requirements for relief <u>pendent lite</u>. Yet they have not even addressed three of the four elements required to support the TRO requested here.

It is clear, however, that whether considered as the first of the four injunctive relief showing requirements, or viewed generally in judging the legal propriety of the relief requested, the Motion is fatally deficient. First, while the complaint on which the Motion depends claims to be based on Section 1983 of the Civil Rights Act, it does not meet even the threshold showings required to maintain such actions in this jurisdiction. Neither do the other statutes cited in the complaint support the propriety of this action.

Second, even if jurisdiction to entertain the action based on Section 1983 were present, all of the Plaintiffs have initiated administrative proceedings addressed to the same matters raised in this action. None has exhausted his/her administrative remedies, and the Court should not address new arguments concerning new student placements in the first instance.

Third, the claim of C.A. is moot. And fourth, grant of the requested relief for T.L. and A.J.P. would alter, not preserve the <u>status quo</u> – a result clearly at odds with the fundamental character of permissible <u>pendent lite</u> relief.

With respect to the final three of the four required showings for injunctive relief, the Plaintiffs have admittedly presented nothing – they have shown neither that they would be irreparably injured in the absence of the requested relief, nor that the balance of equities does not favor the Defendants, nor that the public interest favors a grant of their requested relief.

Instead, the Motion simply asserts that the stay-put provision of IDEA obviates the need for any such showings, and that when the statute's "then-current placement" is

ascertained, the Court may summarily order its enforcement. But as to the two claims not moot here, the Plaintiffs concede that enforcement of the prior placement of both students no longer possible, and they seek not an enforcement of a prior placement, but a summary designation by the Court of *new* placements for each student, based on information about to be considered in pending administrative proceedings, and as to which there is not yet a final expert determination. There is no precedent whatever for such peremptory action by the Court, and the Plaintiffs are not excused from the traditional requirements to justify such extraordinary relief.

    The Defendants submit that the Motion must be denied and, in the extraordinary circumstances of this action and based on the face of the complaint, the action herein should be dismissed forthwith.

                                      Respectfully submitted,

                                      ROBERT J. SPAGNOLETTI
                                      Attorney General for the District of Columbia

                                      GEORGE C. VALENTINE
                                      Deputy Attorney General
                                      Civil Litigation Division

                                      /s/ Edward P. Taptich_____
                                      EDWARD P. TAPTICH [#012914]
                                      Chief, Equity Section 2
                                      441 – 4th Street, N.W., 6th Fl. South
                                      Washington, D.C. 20001
                                      (202) 724-7334

September 23, 2005