IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETTY LASTER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 5-CV-1875(RMU) |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants filed their Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Opposition"). Defendants' Opposition concedes or fails to address and refute the evidence produced in Plaintiffs' Motion for Temporary Restraining Order ("Motion"). Defendants' Opposition largely ignores governing case law, which, as discussed both in Plaintiffs' Motion and in greater detail below, fully supports Plaintiffs' request for Stay Put injunctive relief.

**A. This Court Has Jurisdiction over the Subject Matter**

**1. Statutory Predicate for Jurisdiction**

Plaintiffs alleged the requisite statutory basis for jurisdiction over their Complaint. Plaintiffs alleged, inter alia, that:

> This Court has jurisdiction pursuant to 20 U. S.C.Section 1415(i)(3)...."

Complaint at Para 1. Defendants state that there is no jurisdiction here. Opposition at 5, Para. 2 ("[S]ection 1415 (i (3) deals [only] with awards of attorneys' fees"). Section 1415(i)(3) states:

1

> "(A) IN GENERAL--- The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy."

20 U.S.C. Section 1415(i)(3)(A). This Court has jurisdiction over Plaintiffs' Complaint.

## 2. There Is No Administrative Remedy Available for Plaintiffs to Exhaust

IDEA does not require Plaintiffs to exhaust remedies that are futile as a legal or practical matter. Honig v. Doe 484 U.S. 305, 326-27(1988).Plaintiffs' Motion reviewed the exceptions to the exhaustion requirement and demonstrated that resort to administrative remedies would be futile or inadequate. Defendants' Opposition does not address that case law, or Plaintiffs' conclusions therefrom. See Opposition at 6 (not addressing Honig standard, other exceptions to exhaustion requirement, or caselaw cited by Plaintiffs).

Here, there is no administrative remedy for Defendants pre due-process-hearing deprivation of Plaintiffs' Stay Put rights. Defendants do not dispute Plaintiffs' contention that Defendants duty to maintain the Stay Put placements of T.L. and A.J.P. attached on July 28, 2005 and August 10, 2005. See Plaintiffs' Motion at 6-9, 12; Defendants' Opposition at 2-3. Plaintiffs may not be offered hearing dates on their due process complaints until some time in early December. See 20 USC Section 1415 ©, (f), as amended .Plaintiffs asserted that the DCPS Student Hearing Office has no mechanism for determining Plaintiffs' Stay Put rights in advance of the due process hearing on the merits. Defendants effectively concede that there is no such mechanism.

Opposition at 5 (quoting, without disputing, Plaintiffs' assertion that the Student Hearing Office has no such mechanism).

If Plaintiffs are required to wait until their due process hearings for a determination of their Stay Put placements, then T.L, will have been without any schooling for more than three months, A.J.P. will have been without specialized instruction, related services, and supplemental aids for more than three months, and C.A. will have been without her dual Grafton/Cabin John placement for more than three months. See Motion at 14; Motion Ex. T (T.L. Due Process Complaint field Sept. 9, 2005), Motion Ex. W (AJP Due Process Complaint filed Sept. 8, 2005), Motion Ex. X (C.A. Due Process Complaint filed Sept. 13, 2005). See 20 U.S.C. 1415(c)(f), as amended (instituting new Dispute Resolution and Notice requirements prior to due process hearing, and lengthening hearing timelines).

The Plaintiff children might, in the event, wait much longer than that for a resolution of their Stay Put placements , were the determination of their Stay Put right relegated to the administrative system maintained by DCPS. Due process hearing s at the Student Hearing Office are subject to lengthy, repeated, sometimes arbitrary, delays and continuances, further prolonging the period during which these Plaintiffs would be deprived of specialized instruction and related services, in violation of IDEA.

**3. No Claims Are Moot**

Defendants erroneously allege that they have resolved C.A.'s claims. In fact, Defendants have substituted one claim for another. Defendants assert, Opposition at 7, that the claim of C.A. is moot. Defendants allege that "documentation has now been completed and C.A. is able to attend Cabin

John." Id. Defendants provide none of that "documentation" for review by the Court or by Plaintiffs. Nor do Defendants submit any confirmation, by Montgomery County officials, that the Montgomery County Public School System ("MCPS") has received the authorizations that it has demanded, or that it has approved C.A.'s re- enrollment in the Cabin John day program.

The only support for Defendants' claims is the declaration of Judith Smith. See Opposition at 7 (citing only to Smith Declaration).[1] Ms. Smith's declaration provides no information that would permit the Court to guage its reliability.

In Ms. Alston's experience, DCPS does not provide reliable information concerning its actions or intentions with respect to C.A.'s Grafton or Cabin John placements. See Ex. D at 4 (H.O.D. finding that DCPS agreed to transmit payment authorizations to MCPS, but then decided against funding MCPS day program); id. (H.O.D. finding that DCPS fabricated IEP/MDT meeting Notes); id. at 5 (H.O.D. finding that DCPS falsified form of Notice of Change of Placement). See also Ex. F at Para. 9 (Philips Declaration)(DCPS agreed on various occasions in period 2003-23005 to transmit authorizations to MCPS, but never did so).

Whatever DCPS may have transmitted to MCPS, DCPS has not provided to the Court the documents that DCPS' liaison to Grafton School transmitted to

---

[1] Ms. Smith does not recite the source or basis of her knowledge, does not recite the names, titles or offices of the person or persons who transmitted the document to Montgomery County, does not state the name, office or title of the person who communicated by telephone to Montgomery County, does not state the name of the person or of the office within the Montgomery County Public School System to whom the document was transmitted, or the name or office of the person within Montogmery County who informed DCPS that C.A. will be able to attend Cabin John as of Monday, September 26, 2005.

4

Grafton School's Education Administrator yesterday. These documents show that DCPS has issued notice of its intention to remove C.A. from her Grafton School residential placement, and have rescinded funding authorization for her Grafton School placement. See Ex. A. (telefax transmittal from Ms. Dierdre Council to Grafton)(Sept. 24, 2005. Ms. Council, the DCPS liaison to Grafton, teelfaxed to Grafton yesterday two documents. Id. They are (1) a notice of proposed change in C.A's placement, changing C.A.'s placement from Grafton School to Cabin John MS and (2) a tuition authorization form, substituting authorization for payment of Cabin John tuition for authorization for payment of Grafton School tuition.

These documents evidence not compliance with C.A.'s IEP and the Stay Put provision, but substitution of one violation for another: DCPS is substituting the Cabin John placement and funding authorization for the Grafton School placement. DCPS is not, as C.A.'s IEP requires, joining and funding both placements.

Plaintiffs fear that DCPS may intend, once it has accomplished her removal from Grafton School, to then transfer C.A. to a DCPS day –placement, as DCPS did in 2003. See Ex. D at 6 (H.O.D. finding that DCPS falsified IEP Team and MDT Team records for the purpose of changing C.A.'s placement from Grafton/Cabin John to DCPS' Kramer MS.

B. **Court Determining Stay Put IEP and Placement Does Not Determine Merits of Proposed IEP and Placement**

In determining what constitutes the Stay Put IEP and Placement for a child, a court does not determine any of the merits issues concerning the

adequacy of the proposed IEP or placement. St. Tammany Parish Sch. Bd. V. Louisiana, 142 F.3d 776, 785 (5th Cir. 1998), citing Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 81 (3d Cir. 1996). The court merely determines which placement is the then current placement and orders relief.

Plaintiffs do not ask this Court to rule on the adequacy of Defendants' proposed IEPs or placements. That clearly is a matter to be determined, in the first instance., at the administrative due process hearing. Defendants assert, Opposition at 6, that the materials that Plaintiffs have submitted to this Court will also be submitted to the administrative hearing. That may well be the case. What is not true, however, is Defendants' claim, Opposition at 6, that the relief that Plaintiffs seek from this Court is precisely the same as the relief that Plaintiffs will seek in the administrative hearing.

As the Tammany Parish and Susquenita courts held, the issues before this Court are narrow and they do not reach the issues of the adequacy or merits, substantive or procedural, of DCPS' proposed IEPs and placements. 142 F.3d at 786 (characterizing a ruling on a stay put placement as requiring consideration only of narrow issues); citing, 96 F.3d at 81( issues to be reviewed in a stay-put proceeding are narrow and involve only practical question of where child to attend school while the administrative review process unfolds).

### C. Proposed IEPs and Placements Effect Substantial Change in Plaintiffs' Educational Programs

Plaintiffs' Motion addressed two independent but related issues, both of which go to the issue of Stay Put relief, not to the issue of the merits of Defendants' proposed IEPs and placements. Defendants effectively have conceded both issues in their Opposition.

6

The first issue concerns the question of whether DCPS' proposed IEPs and program/placements would effect a significant or substantial change in the education the children have received, when compared to the children's school year 2004-2005 IEPs and placements. The second concerns the question of what constitutes a program that is equivalent or similar to the Stay Put placement, when for whatever reason the Stay Put program is not available. That goes to the issue of the form of Stay Put relief to be made available to Plaintiffs on the facts here.

Plaintiffs' Motion addressed the first of those issues and showed that each of the children's education would be significantly changed under the proposed IEPs and placements. See Motion at 2-3 (summarizing school year 2004-2005 IEPs and placements for each of T.L., A.J.P. and C.A.; Motion at 6-9 (describing differences between educational programs and IEPs proposed by DCPS for school year 2005=2006 and the children's school year 2004-2005 IEPs and program/placements). See Lunceford v. D.C., 745 F.2d 1577, 1582 (D.C.Cir. 1984)(movant must identify significant change in or elimination of basic element in program in order for change to qualify as change in educational placement that triggers stay put protection).

As to both T.L. and A.J.P. Defendants issued notices of proposed changes in both identification/classification and in placement. Motion Ex. M; Motion Ex. Q. As to T.L. Plaintiffs demonstrated that the proposed IEP and Placement eliminated, inter alia, related services, supplemental aids, and specialized instruction provided him under the Stay Put IEP and placement. Motion at 6-9. As to A.J.P., Plaintiffs demonstrated that DCPS' proposed placement

constituted a substantial increase in the level of restrictiveness of the program to be provided AJP, in violation of principles fundamental to IDEA.

Defendants' Opposition does not dispute plaintiffs' characterization of the changes that would be made in the children's educational programs were the proposed IEPs and placements given effect. See Opposition at 2-3 (presenting summary history pf placements without reference or citation to a single IEP, program document, program description, IEP- or MDT meeting note, evaluation or declaration from person with knowledge of the child or child's program.)

When the movant has demonstrated that the proposed placement effects a substantial change in the child's program, the movant is entitled to a Stay Put injunction. Henry v. School Administrative Unit, 70 F.Supp 2d 52, 61 (D.N.H. 1999).

### D. Defendants Concede that KDS, Stoddert, and Grafton/Cabin John are Plaintiffs' Stay Put Placements

Plaintiffs alleged, and the facts presented in their Motion demonstrated, that the Stay Put placement of T.L. is his 2004-2005 IEP/ Kingsbury Day School placement, the Stay Put placement of A.J.P. is the 2004-2005 Transition Plan, IEP/inclusionary preschool program at Stoddert ES, and that the Stay Put placement for C.A. is her June 2005 IEP/joint placement at the Grafton/Cabin John programs. Motion at 6-9, 15-16. Defendants' Opposition concedes that KDS is T.L.'s Stay Put placement, and concedes that A.J.P's placement is the program he was provided at the Stoddert ES inclusion preschool. Opposition at 7-8.

### E. Defendants Changed the Status Quo by Deciding to Remove Plaintiffs from their 2004-2005 Placements

Defendants do not challenge or refute, the facts of the Plaintiffs' IEP and placement history presented in Plaintiffs' Motion. See Motion at 6-9 (presenting evidence of placement history). Defendants do mischaracterize, or distort, those facts. They, apparently, would have the Court believe that DCPS took no steps to change Plaintiffs' placements until those placements became, in some respect, "unavailable." See Opposition at 3 (at end of school year A.J.P.'s Stoddert Program was discontinued, then on Aug. 10, 2005 DCPS issued a new IEP). But see, Ex. B at Para 6-7 (DCPS issued notice of change of placement changing A.J.P.'s placement from Stoddert to Garrison in March 2005 and Mrs. Jackson filed due process complaint); Ex. C at 3 (Hearing Officer's Determination of May 11, 2005) (Stoddert shall remain A.J.P.'s Stay Put placement). See Opposition at 7 (implying that KDS refused to take T.L. back before DCPS decided on July 28, 2005 to change his IEP and placement.)

Defendants also assert that Plaintiffs' Stay Put placements could not have been preserved. See Opposition at 4 (asserting, without providing evidence, that placements of T.L. and AJP "could not have been preserved after the end of school year"). That is not the case.

As to A.J.P., the decision to disband the Stoddert program was entirely the deciison of DCPS itself. It was a decision that DCPS took at the same time that it entered into a settlement agreement before a due process hearing officer in which it agreed to maintain Stoddert as AJP's Stay Put placement. See Opposition at 4 (placement could not be preserved past end of school year); but see Ex. C at 3 (parties reached agreement to settle complaint).

In T. L.'s case, it was both within DCPS' power to reserve T.L.'s KDS placement, or at they very least, to take significant measures to attempt to preserve that placement, and it was DCPS' statutory obligation to preserve that placement. See Ex. R (Aug. 26, 2005 letter of Mrs. Laster)( informing DCPS of KDS violations of T.L.'s statutory rights and requesting DCPS monitoring of KDS); Ex. S. at 2 (Sept. 12, 2005 letter of counsel)( requesting that DCPS require KDS to admit T.L or propose equivalent placement); id. (noting that 60 % of KDS students funded by DCPS and urging DCPS to utilize that leverage to preserve T.L.'s placement); Ex. T at 4-7 (reciting KDS violations of T.L's IDEA rights ); 20 U.S.C. 1412 (a)(11)(state and school district must assure that child placed in private school has all rights that child would have in a public school placement).

Defendants' Opposition presents no evidence that DCPS made any attempt to preserve T.L.'s placement at KDS.  DCPS violated its statutory duty to T.L. by failing to monitor KDS, and failing to assure that his IDEA rights were protected at KDS. Now DCPS seeks to leverage its failure to preserve those rights as a pretext for denying T.L. his rights under the Stay Put provision.  Similarly, DCPS, having induced Mrs. Jackson into a settlement of her first due process claim by promising to maintain Stoddert ES as A.J.P.'s Stay Put placement, now seeks to evade its obligation to maintain  A.J.P's Stay Put placement, by claiming that it had no responsibility for its own decision to dissolve that program.

**Defendants Must Provide Stay Put or Equivalent Placements**

When a child's Stay Put placement is not available, DCPS must provide a placement that is equivalent or similar to the Stay Put placement. Henry v. School Administrative Unit, 70 F.Supp 2d 52, 61 (D.N.H. 1999), citing McKenzie v. Smith, 771 F.2d 1527, 1533 (D.C.Cir. 1985); Letter to Fischer, 21 IDELR 995 (where child cannot remain in his current educational placement, the district would be required to maintain child in educational program that is substantially and materially the same as the student's placement during the previous school year). Because Plaintiffs have demonstrated, and Defendants have not disputed, that DCPS' proposed IEPS and placement/programs are substantially different from those in the children's Stay Put placements, the proposed DCPS placements can not be considered as Stay Put placements for Plaintiffs.

Plaintiffs, in their Motion, presented evidence showing that High Road Academy, though a different school, provides the same setting, programming, specialized instruction and is staffed by instructors having the same qualifications as KDS. Motion at 18. Plaintiffs presented evidence that Mrs. Jackson has enrolled AJP in an inclusion preschool, substantially the same setting as that of the preschool program he attended at Stoddert ES. Motion at 19. See also Declaration of Mrs. Jackson at Para. 15., attached hereto as Exhibit B.

The relief that Plaintiffs request is simply a substitution of one locale for another. See 70 F.Supp.2d at 61(ordering Stay Put at parental substitute for original Stay Put placement where original placement not available and parental placement essentially substituted one locale of instruction for another that court found provided essentially same services and programming). Plaintiffs

11

seek only the instruction, related services and supplemental aids that DCPS is required, by their Stay Put IEPs, to provide. Spillsbury v. D.C., 307 F.Supp.2d 22 (D.D.C. 2004)(Stay Put provision requires that DCPS provide all related services and supplemental aids on child's Stay Put IEP).

Plaintiffs respectfully request that their Motion for Temporary Restraining Order be granted.

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Road NW
Washington, D.C. 2o007
(202) 333-8553

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BETTY LASTER, et al.,           )
                                )
    Plaintiffs,                  )
                                )
        v.                       ) Civil Action No. 5-CV-1875(RMU)
                                )
DISTRICT OF COLUMBIA, et al.,   )
                                )
    Defendants.                  )
_____)

## **DECLARATION OF LESLIE T. JACKSON**

I, Leslie T. Jackson, a citizen of the United States over the age of eighteen years, declare as follows:

1. I have reviewed the declaration of Judith Smith .

2. I know of no meeting scheduled on September 28, 2005 and I know of no meeting scheduled to discuss A.J.P.'s Stay Put placement.

3. DCPS repeatedly has informed me and my attorney that it would not consider any Stay Put placement for A.J.P.

4. I am aware that, as part of the statutory Dispute Resolution Meeting requirement, I must attend a Dispute Resolution Meeting in order to obtain a due process hearing. I understand that at some point such a meeting, chaired by Ms. Zondra Johnson, will be convened in connection with my Due Process Complaint.

5. Ms. Johnson and I have exchanged telephone messages concerning possible dates for a Dispute Resolution Meeting. I have proposed a meeting date for September 30, 2005. To date, Ms. Johnson has not sent me a notice confirming that meeting date. I have attached a copy of my letter to Ms. Johnson.

1

6. I last met with Ms. Johnson on September 8, 2005, at which point she handed me a letter stating that DCPS would consider no placement for A.J.P., other than the Bernard Autism Progrram.

7. Ms. Johnson is the person who chaired the August 10, 2005 IEP meeting for AJP. It was Ms. Johnson who, acting alone, over my objections---and in my view--- in violation of IDEA and of D.C. law, decided that A.J.P. would be re-classified as "Autistic."

8.. It was Ms. Johnson who, alone, determined on August 10, 2005 that A.J.P. would be placed at the Barnard ES Autism program.

9. Ms. Johnson has represented DCPS in issues concerning A.J.P.'s placement since on or about November 2004. Throughout this process she has acted without regard to our procedural rights under IDEA, and with no apparent concern for his substantive right to a special education and related services that address his individual educational needs.

10. The facts concerning actions taken by Ms. Johnson that violated our rights under IDEA are set forth at paragraphs 11-21, 24-27, 29-30, 34-37 on pages 5-6 of my Due Process Complaint, filed September 8,2005, and attached to my motion as Exhibit W.

11. I have no reason to believe or expect that, at this date, Ms. Johnson or her superiors will now be prepared to consider, in good faith, providing A.J.P. with a Stay Put placement.

12. Over the course of the last school year, I attended a long series of MDT meetings at Stoddert ES, at each of which DCPS stated that it had a series of "appropriate" placements for A.J.P. DCPS was quick to assure me that it had many alternative placements that would meet A.J.P.'s needs.

13. When I investigated those proposed placements, or when, as at the due process hearing in May, DCPS had to defend its proposed placement it developed that the placement was not defensible and not appropriate.

14. I find it puzzling that Ms. Smith now asserts in her Declaration that there are placements other than Barnard that DCPS believes might be appropriate for A.J.P. If that were the case, why would DCPS have not offered any one of those placements as an alternative Stay Put placement, when I disagreed with their proposal to place A.J.P. at Barnard.

15. When DCPS refused A.J.P. entry to Stoddert on August 29, 2005, and then refused to respond to my request for an alternative inclusion pre-school program for A.J.P, A.J.P. and I were in a position for which we were completely unprepared. I had no information concerning preschool programs, private or public, that might have available openings. Because I work, I had little time in which to investigate options for A.J.P.'s schooling. As I stated in my earlier Declaration, I was able to locate an inclusionary preschool for A.J.P., and he began classes there on September 12, 2005. As I have time to investigate other preschools, it may be that I may find another preschool that I think would offer A.J.P. more. If that is the case, I wish to have sufficient flexibility to make that decision, without causing any interruption in the services that he needs and that I have requested that the Court order. For that reason, I ask the Court to order DCPS to fund those services at the inclusion preschool of my choice, rather than at a specific school.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____                    _____

**Date**                                    **Leslie T. Jackson**

3