## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BETTY LASTER *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 05-1875 (RMU) |
| | : | | |
| v. | : | Document No.: | 2 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFFS' MOTION FOR A STAY PUT INJUNCTION

### I. INTRODUCTION

This case comes before the court on the plaintiffs' motion for a stay put injunction.[1] The plaintiffs in this case are handicapped children and their parents or guardians. The plaintiffs allege that the defendants, the District of Columbia and the District of Columbia Public Schools ("DCPS"), violated the stay put provisions of the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The plaintiffs move the court for injunctive relief to end the defendants' alleged violation of the plaintiffs' stay put rights. Because the defendants' proposed educational placements violated the IDEA's stay put provision, as set forth in 20 U.S.C. § 1415(j), the court grants the plaintiffs' motion for a stay put injunction.

---

[1] Under the Individual with Disabilities Education Act ("IDEA"), a parent who objects to her child's educational placement may file an administrative due process complaint requesting review of the placement decision. 20 U.S.C. 1415(b) – (d). A stay put injunction allows a student to remain at his current school pending administrative review of a child's educational placement. 20 U.S.C. § 1415(j); *Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1020 (D.C. Cir. 1989). Although the plaintiffs characterize their motion as one for a temporary restraining order, the plaintiffs are asking the court to enforce their rights to remain at their current educational placement. Accordingly, the court treats their motion as one for a stay put injunction.

## II.  BACKGROUND

The plaintiffs are three disabled children, T.L., A.J.P., and C.A., and their parents or guardians.  The plaintiffs are special education students in the District of Columbia.  All of the plaintiffs currently have administrative due process complaints pending.  Compl. ¶ 53.

### 1.  T.L.

T.L. is sixteen years old and brings suit through his grandmother and legal guardian, Betty Laster.  *Id*. ¶¶ 2-3.  In May 2004, T.L.'s individualized education program ("IEP"), prepared pursuant to the IDEA, stated that T.L. should attend Kingsbury Day School ("KDS") because he "requires small group instruction, individualized education and integrated related services."  Pls.' Mot., Ex. I at 35.  KDS is "a private special education school for students with severe specific learning disabilities."  Compl. ¶ 11.  T.L.'s evaluations "demonstrated that he suffered from a range of severe learning disorders, including disorders of [r]eading, [w]riting, auditory processing, memory, visual perception, and executive function."  Pls.' Mot. at 3.  Pursuant to the IEP, T.L. attended KDS in the 2004-2005 school year.  *Id.*

On July 28, 2005, Laster and school officials met to discuss T.L.'s IEP for the 2005-2006 school year.  *Id.*, Ex. P; Defs.' Opp'n at 2.  At that meeting, KDS stated that T.L. could not return to KDS for the 2005-2006 school year.  Defs.' Opp'n at 2.  DCPS also changed "T.L.'s classification from 'learning disabled' to a primary classification of 'learning disabled' with a secondary classification as 'emotionally disturbed.'"  Compl. ¶ 14.

Because T.L. could not return to KDS for the 2005-2006 school year, DCPS notified Laster that it was placing T.L. at another school, the D.C. Alternative Learning Academy ("DCALA").  Defs.' Opp'n at 3.  Laster informed DCPS that she disagreed with T.L.'s placement at DCALA and the change in T.L.'s classification.  Compl. ¶ 18.  Laster also filed an

administrative due process complaint challenging the IEP and placement at DCALA on September 9, 2005.  Defs.' Opp'n at 3.

### 2.  A.J.P.

A.J.P. is four years old and brings suit through his mother, Leslie T. Jackson.  Compl. ¶ 4.  In August 2004, A.J.P.'s IEP for the 2004-2005 school year stated that he should attend the "inclusion nursery school program" at Stoddert Elementary School.  Compl. ¶ 27.  Stoddert Elementary School, however, no longer offers its inclusion program.  Defs.' Opp'n at 8.

On August 10, 2005, DCPS issued a new IEP, placing A.J.P. at the citywide autism program at Barnard Elementary School.  Compl. ¶ 30; Defs.' Mot. at 3.  That IEP also changed A.J.P.'s classification from developmentally delayed to autistic.  Compl. ¶ 30.  Because Jackson disputes the new IEP's change in classification and the Barnard Elementary School placement, *id.* ¶ 32, she filed an administrative due process complaint September 13, 2005.  Defs.' Opp'n at 3.

### 3.  C.A.

C.A. is thirteen years old and brings this suit through her mother, Chanda Alston.  C.A. is multiply handicapped.  Compl.¶ 37.  C.A.'s IEPs for the school years 2003-2004, 2004-2005, and 2005-2006 called for "a residential placement at Grafton School in Rockville, MD, combined with a day instructional program for special education students at the Cabin John" Middle School.  Pls.' Mot. at 5.  "Pursuant to an agreement between DCPS and Montgomery County Schools, DCPS pays that school system for [C.A.]'s attendance at Cabin John."  Defs.' Mot. at 2.  DCPS states, however, that "[b]ecause of certain confusion, the authorizations necessary to be transmitted [sic] to Montgomery County by DCPS for the 2005-2006 school year were delayed."  *Id.*  As a result, Alston filed an administrative due process complaint on

September 13, 2005.

### B. Procedural Background

After filing administrative complaints, the plaintiffs filed a civil suit alleging violations of their stay put rights on September 22, 2005. Contemporaneous with the filing of the civil suit, the plaintiffs also filed a motion for a stay put injunction. Because the complaint and the motion alleged that the plaintiffs were deprived of their stay put rights, this court ordered an expedited briefing schedule on September 23, 2005. The court now turns to the plaintiffs' motion for stay put injunctive relief.

## II. ANALYSIS

### A. Legal Standard for an IDEA Stay Put Injunction

The purpose of the IDEA is to provide disabled children with "a free appropriate public education" ("FAPE"), and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d). To that end, the parents or legal guardians, teachers, school district and other professionals (collectively, the "IEP team") meet annually to design a comprehensive individualized education program ("IEP") tailored to each disabled child's needs. 20 U.S.C. § 1414(d). The IEP "sets forth the child's educational level, performance, and goals," and it "is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty High Sch. Dist No. 218 v. Il. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996); *see also Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 25 (D.D.C. 2004) (stating that the IDEA requires that an IEP "include a statement of needs, services, learning aids, and programs that should be made available to the student"). Once the IEP team develops the IEP, the school system must provide an appropriate educational

placement that comports with the IEP. *Spilsbury*, 307 F. Supp. 2d at 25.

Because the "IDEA guarantees parents of disabled children an opportunity to participate in the identification, evaluation, or educational placement of their children, *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000), parents who disagree with the educational placement or the conclusions set forth in the IEP may request an administrative "impartial due process hearing." 20 U.S.C. § 1415(f). Parents who object to the hearing officer's decision may bring suit in state or federal court. 20 U.S.C. § 1415(i)(2). During the pendency of these judicial or administrative proceedings, if "the State or local educational agency and the parents otherwise agree, the child *shall* remain in his then-current education placement" 20 U.S.C. § 1415(j) (emphasis added). This procedural safeguard is commonly known as the "stay put provision" and its purpose is to prohibit "state or local school authorities from unilaterally excluding disabled children from the classroom . . . during the pendency of review proceedings." *Honig v. Doe*, 484 U.S. 305, 306, 308 (1988).

A parent can invoke the stay put provision when the school system proposes a "a fundamental change in, or elimination of, a basic element of the [then-current education placement]." *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). A parent moving for a stay put injunction "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Id.*

Although the IDEA does not define the term "then-current educational placement," the meaning of the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Bd. of Educ. of Cmty High Sch. Dist No. 218*, 103 F.3d at 548; *see also Spilsbury*, 307 F. Supp. 2d at 26-27 (explaining that "the IDEA clearly intends 'current

5

educational placement' to encompass the whole range of services that a child needs" and that the term "cannot be read to only indicate which physical school building a child attends"). Accordingly, if a child's then-current educational placement is not available, the school system must provide the student with placement in a similar program during the pendency of administrative and judicial proceedings. *Knight v. Dist. of Columbia*, 877 F.2d 1025, 1029 (D.C. Cir. 1989); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985); *Block v. Dist. of Columbia*, 748 F. Supp. 891, 898 n.9 (D.D.C. 1990).

"The stay put provision has been interpreted as imposing an automatic statutory injunction." *Casey K. ex rel. Norman K. v. St. Anne Cmty High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case) (citing *Honig*, 484 U.S. at 326-37). In an action alleging a violation of the IDEA's stay put provision, parents are not required to exhaust the administrative process before bringing suit in court. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d. Cir. 2000). The reasoning behind this rule is that "[t]he administrative process is 'inadequate' to remedy violations of § 1415(j)." *Id.* (citing *Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d. Cir. 1991)). "[G]iven the time sensitive nature of the IDEA's stay-put provision, 'an immediate appeal is necessary to give realistic protection to the claimed right.'" *Id.*

### B. The Defendants Violated the Plaintiffs' Stay Put Rights

#### 1. T.L.

Laster consented to T.L.'s IEP for the 2004-2005 school year. Pls.' Mot., Ex. I at 23. According to the 2004-2005 IEP, "[T.L.] requires a small class environment with a low student-teacher ratio, specialized instruction and related services integrated into the program." *Id.* DCPS' proposed 2005-2006 IEP changed T.L.'s school placement from KDS to DCALA. Defs.'

Mot. at 3. It also "substantially reduced or eliminated the related services and supplemental aids that the 2004-2005 IEP had found necessary." Pls.' Mot. at 7. The defendant does not contest these allegations. Rather, the defendants assert that T.L. cannot be placed at KDS because KDS refuses to accept him for the 2005-2006 school year. Defs.' Opp'n at 2.

Because T.L.'s guardian did not consent to the 2005-2006 IEP, T.L.'s current educational placement is the 2004-2005 IEP, not the 2005-2006 IEP. 20 U.S.C. §1415(j); *see also Spilsbury*, 307 F. Supp. 2d at 26 (explaining that "plainly, 'current educational placement' can only mean the student's placement before the proposed [and contested] change"). The defendant argues that it is impossible to fulfill the requirements of the 2004-2005 IEP because KDS will not accept T.L. in the 2005-2006 school year.[2] The defendants' argument, however, is misplaced. If KDS cannot accept T.L. for the 2005-2006 school year, the defendants are obligated to find a similar placement alternative that fulfills the requirements of the 2004-2005 IEP during the pendency of his administrative proceedings. *Knight*, 877 F.2d at 1029; *McKenzie*, 771 F.2d at 1533; *Block*, 748 F.Supp. at 898 n.9. Because the defendants are required to place the plaintiff in a comparable school program, and the defendants do not dispute that T.L. is not enrolled in a similar program, the court grants T.L.'s motion for stay put injunctive relief.

### 2. A.J.P.

Pursuant to his 2004-2005 IEP, "A.J.P. attended an inclusion pre-school classroom in a language-intensive program at Stoddert Elementary School." Pls.' Mot. at 4. The 2004-2005 IEP classified A.J.P. as developmentally delayed. The 2005-2006 IEP, on the other hand,

---

[2] The defendants also argue that the plaintiffs have failed to exhaust their administrative remedies and that the stay put provision does not operate as an automatic injunction. Defs' Mot. at 6, 8. But, as discussed *supra*, the case law holds otherwise. Moreover, the defendants have not cited any case law in support of their propositions.

classified A.J.P. as autistic and placed him in the autism program at Barnard Elementary School. Pls.' Mot. at 8. Jackson does not consent to the 2005-2006 IEP placement because it "removes A.J.P. entirely from the general education program" and "deprives him of the language-based program that he requires to overcome his speech delays." *Id.* at 9.

Because Jackson did not consent to the 2005-2006 IEP, T.L.'s current educational placement is the 2004-2005 IEP. 20 U.S.C. § 1415(j); *see also Spilsbury*, 307 F. Supp. 2d at 26. As in T.L.'s situation, the defendant argues that it cannot fulfill the requirements of the then-current placement because the Stoddert Elementary School no longer offers the program that A.J.P. attended. As explained *supra*, however, the defendants are obligated to find a similar placement alternative that fulfills the requirements of the 2004-2005 IEP during the pendency of his administrative proceedings. *Knight*, 877 F.2d at 1029; *McKenzie*, 771 F.2d at 1533; *Block*, 748 F.Supp. at 898 n.9. Because the defendants are required to place the plaintiff in a program similar to the one at Stoddert Elementary School, and the defendants do not dispute that A.J.P.'s. is not enrolled in a comparable program, the court grants A.J.P.'s motion for a stay put injunction.

### 3.  C.A.

C.A.'s 2003-2004, 2004-2005, and 2005-2006 IEPs require "residential placement at the Grafton School in Rockville, MD, combined with a day-instructional program for special education students at the Cabin John" Middle School. Pls.' Mot. at 5. C.A.'s mother and DCPS jointly approved C.A.'s 2005-2006 IEP. *Id.* at 6. Accordingly, the 2005-2006 IEP constitutes C.A.'s current placement for purposes of the IDEA's stay put provision. C.A.'s situation differs from that of T.L. and A.J.P. in that her parent and DCPS are in agreement about her placement. As of the filing of the plaintiffs' motion, however, DCPS had not yet submitted the payments

and authorizations required to enroll C.A. at Cabin John. *Id.* at 6.

According to DCPS, the payments and authorizations for C.A.'s enrollment were delayed "because of certain confusion." Defs.' Opp'n at 2. But, DCPS asserts that the necessary documents were sent on September 23, 2005, and "it is DCPS' understanding that the student will be able to attend Cabin John beginning Monday," September 26, 2005. *Id.* As a result, the defendant argues that the motion for a stay put injunction is moot with respect to C.A. because it sent the necessary documentation. *Id.* at 7.

### a. Legal Standard for Mootness

A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Albritton v. Kantor*, 944 F. Supp. 966, 974 (D.D.C.1996) (Urbina, J.) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). It is well established that a "defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

The standard for determining whether a case or controversy is mooted by a defendant's voluntary conduct is "stringent." *See id*. In determining mootness, the court has to make "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting the mootness." *Id*.; *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does

not make the case moot").

The movant must also show that "interim relief and events have completely and irrevocably eradicated the effects of the alleged violation." *Albritton*, 944 F. Supp. at 974 (citing *Davis*, 440 U.S. at 631).

### b. C.A.'s Claim is not Moot

The defendants argue that C.A.'s claim is moot because they have submitted the requisite payment authorization to enroll C.A. at Cabin John Middle School. Defs.' Mot., Ex. 1. The plaintiffs, in their reply, point out that DCPS has not submitted any documentary evidence, other than a declaration, to prove that it submitted the required paperwork. Pls.' Reply at 4. The plaintiffs further allege that while the defendants may have submitted the payment authorization for C.A.'s enrollment at Cabin John, the defendants recently "rescinded funding authorization for [C.A.]'s Grafton School placement." *Id.* at 5.

A failure to fund a student's placement constitutes a unilateral change in the placement, *Petties v. Dist. of Columbia*, 881 F. Supp. 63, 66 (D.D.C. 1995) (holding that "fail[ure] to make payments in whole or in part or cutting off funds for special education programs amounts to a unilateral change in students' placements, which is prohibited by the IDEA"). DCPS' failure to fund C.A.'s placement, in other words, violates the IDEA's stay-put provision. Although DCPS submitted a declaration that allegedly proves it has submitted the documentation required for C.A.'s enrollment at Cabin John, Defs. Mot. at 2, the declaration alone does not make the case moot. *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (concluding that a defendant's statement that it will not repeat challenged conduct "does not suffice to make a case moot "). Moreover, the plaintiffs allege that the defendants have "rescinded funding authorization for [C.A.]'s Grafton School placement." Pls.' Reply at 5. Because the court is not clear that DCPS'

alleged violation of the IDEA stay-put provisions has ceased with respect to C.A.'s placement, the court declines to declare her claim moot.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for a stay put injunction. An order consistent with this Memorandum Opinion was issued the 26th day of September, 2005.

RICARDO M. URBINA<br>
United States District Judge