UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETTY LASTER, et al.,              : | |
|                                    : | |
|     Plaintiffs                     : | |
|                                    : | |
|     v.                             : | Civ. Action No. 05-1875 (RMU) |
|                                    : | |
| DISTRICT OF COLUMBIA, et al.,      : | |
|                                    : | |
|     Defendants.                    : | |

## DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT

Defendants, by counsel, hereby move the Court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the Order entered herein on September 30, 2005.

A memorandum of points and authorities in support of this request, together with an appropriate order are attached.

    Respectfully submitted,

    ROBERT J. SPAGNOLETTI
    Attorney General for the District
     of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General
    Civil Litigation Division

    */s/ Edward P. Taptich*_____
    EDWARD P. TAPTICH (012914)
    Chief, Equity Section 2

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651

**October 14, 2005**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BETTY LASTER, et al.,**

      **Plaintiffs**

      v.                        Civ. Action No. 05-1875 (RMU)

**DISTRICT OF COLUMBIA, et al.,**

      **Defendants.**

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT

### STATEMENT OF FACTS

Late Thursday afternoon, September 22, 2005, Plaintiffs filed a Motion for Temporary Restraining Order ("Motion") pursuant to the "stay put" provision of the Individuals with Disabilities Education Act, 20 U.S.C. §1415(j), seeking immediate injunctive relief restraining Defendants from changing the students' educational placements. At mid-morning Friday, September 23, Defendants' counsel received a telephone call from the law clerk of United States District Court Judge Urbina, who, after Plaintiffs' counsel was added, informed Defendants that any opposition was due by 10:00 a.m. the next morning, September 24, and that Plaintiffs' reply would be due two days later, by 10:00 a.m. September 26. Defendants filed an opposition pleading the evening of September 23.

On Monday, September 26, Assistant Attorney General Edward Taptich, having received no notifications of action in the case, logged on to the Court's e-filing system and learned that Plaintiffs had filed a reply on September 25, and that the Court had

3

issued an Order on September 26, granting Plaintiffs' motion. Mr. Taptich – who had efiled the Defendants' opposition on September 23 – had received neither Plaintiffs' reply nor the Court's order via the ECF system.

The Court's September 26, 2005, Order "granted" the Plaintiffs' motion, and required the parties to confer face to face on September 29, 2005, to discuss T.L. and A.J.P.'s placements pending the administrative process.

The parties met in a jury room at the U.S. Courthouse on September 29, 2005 to discuss the students' placements. All discussions were informal; no record of the discussions was made, and no reporter was present. Before the discussions were underway, Judge Urbina entered the jury room and clarified that the parties were to determine placements based upon each student's 2004-2005 Individual Educational Plan ("IEP"). Judge Urbina then exited the jury room and the parties began to discuss the students' educational placements.

Defendants selected Woodson Senior High School ("Woodson") as the school best able to implement T.L.'s 2004-2005 IEP, and explained to T.L.'s guardian, who was present at the meeting, the special education programs available at Woodson, and why Woodson was an appropriate placement for T.L. Defendants selected Garrison Elementary School ("Garrison") as an appropriate placement for A.J.P. Defendants placed a telephone call to Garrison during the meeting, and a special education teacher at Garrison explained the program to A.J.P.'s mother, who attended the meeting. These discussions were held out of the presence of Judge Urbina. The parties discussed the placements for more than one hour. Because of Plaintiffs' counsel's insistence that

4

Defendants place the students at Plaintiffs' preferred locations, the parties were unable to reach an agreement.

When Judge Urbina returned to the jury room a second time, Defendants informed him of Defendants' two proposed placements for the students. However, Judge Urbina did not give Defendants an opportunity to explain why the two schools were appropriate placements for T.L. and A.J.P. He invited Plaintiffs to submit an order, and informed the parties he would sign it.

On October 3, 2005, Assistant Attorney General Veronica Porter checked the Court's e-filing system, and it was first learned that the Court had issued a Memorandum Opinion on September 28, and an Order on September 30, and that Plaintiffs had submitted a proposed order on September 30. The Court's order was virtually identical to that requested by Plaintiffs.

Mr. Taptich, who had filed Defendants' Opposition on September 23, 2005, had not received copies of these filings via the ECF system. Both Ms. Porter and Mr. Taptich called the Court's ECF system personnel, and confirmed that none of the filings in the case had been transmitted to Defendants' counsel. After several lengthy discussions with various clerks, Mr. Taptich was added to the ECF system in the above-captioned case.

Ms. Porter entered her appearance in the above-captioned case on October 3. When Ms. Porter did not receive confirmation of her filing via e-mail, she had to call the Court's ECF system again, to have her name included as a recipient in this case on the ECF system.

Based on a "consideration of additional arguments presented by the parties' counsel" on September 29, and "upon consideration of the views expressed at that meeting with regard to this Court's September 28, 2005 Memorandum Opinion," the Court, on September 30, ordered Defendants to place T.L. at High Road Academy ("High Road"). In an unprecedented addition, the Court also ordered Defendants to fund all related services and supplemental aids for A.J.P. pursuant to his August, 2004, Individual Educational Plan ("IEP") – service providers were to be those "identified by plaintiff Leslie Jackson," and services were to be provided "at the pre-school of Mrs. Jackson's choice, paid for by the Defendant."

Defendants here seek an alteration of that order and judgment.

## ARGUMENT

### I. Plaintiffs' Motion Was Not Exempt From Traditional Four-Part Test for Interim Injunctive Relief.

In issuing the September 30 Order, the Court appeared to rely on its earlier conclusion that a "stay put injunction" could be granted "automatically" – that Plaintiffs had no responsibility to meet the traditional four-part test for injunctive relief (and as to which they had in fact made no showings whatever). Thus, the September 28 Memorandum Opinion stated, "the stay put provision has been interpreted as imposing an automatic statutory injunction," citing Casey K. v. St. Anne Cmty, High Sch. Dist., 400 F.3d 508, 511 (7th Cir. 2005).

As a factual matter, however, Casey K. did not involve a circumstance where, like here, the students involved could not simply remain at their prior location. Nor did it posit any legal requirement that the ordinary considerations involved in a request for injunctive relief be dispensed with. Indeed, the Supreme Court in Honig v. Doe, 484 U.S. 305 (1988) – cited in the Casey K. decision – concluded that "the stay-put provision in no way purports to limit or pre-

6

empt the authority conferred on courts by § 1415(e) (2) . . . indeed it says nothing whatsoever about judicial power." Id. at 327 (citing Doe v. Brookline Sch. Comm, 722 F.2d at 910, 917 (lst Cir. 1984)).  And the Court in Henry v. School Admin.Unit 29, 70 F.Supp. 2d 52, 58 n. 5 (D.N.H. 1999), explained the application of Honig and Doe in interpreting the stay-put provision:

> A true automatic injunction cannot be defeated by evidence tending to show that the issuance of the injunction will cause greater harm to the defendant or the public than its denial.  See, e.g., Tennessee Valley Auth. v. Hill, 437 U.S. 153 193-94, 57 L. Ed. 2d 117, 98 S. Ct. 2279 (1978) (injunction issued to enforce the Endangered Species Act without an evaluation of the harm that the issuance of the injunction would cause to the defendant and the public). A request for a stay-put injunction, in contrast, can be defeated by proof that greater harm is likely to result from the issuance of an injunction than it's (sic) denial. See Honig, 484 U.S. at 327; Doe, 722 F.2d at 919.  Accordingly, the stay-put provision does not, strictly speaking, authorize the issuance of automatic injunctions. Instead, it entitles parents to injunctive relief upon proof of a violation unless the School District can determine that the application of the preliminary injunction favors the proposed change in placement."

Elsewhere, the Henry court observed further that the statutory stay-put provision does not

> . . . prohibit a federal court from altering a child's placement in appropriate cases through the issuance of a preliminary injunction. See *Honig*, 484 U.S. at 327.   Instead, the provision merely states a legislative preference for maintaining the placement during the pendency of an IDEA dispute.  The preference may be overcome through the issuance of a preliminary injunction *if the equitable factors traditionally used by courts to evaluate requests for interim injunctive relief favor a change in the child's placement.*

 Id. (emphasis added).

Thus, this Court should have rejected the automatic injunction interpretation advanced by Plaintiffs, and used the traditional four-factor test in deciding whether injunctive relief should have been granted in this case.  At a minimum, the Court should have permitted Defendants an opportunity to demonstrate that application of the 4-part test would favor a denial of the relief requested.

## II. As a Procedural Matter, the Court's Process Was Inconsistent With Requirements Applicable to Requests for Injunctive Relief, and <u>Denied Defendants' Fundamental Due Process Right to be Heard.</u>

The Court's September 30 Order does not simply grant temporary or interim relief, but grants the ultimate injunctive relief asked for in Plaintiffs' complaint -- placement of the two students where Plaintiffs desire pending completion of administrative proceedings just recently initiated. And it did so without regard to usual interim injunctive relief requirements, and without providing Defendants a reasonable opportunity to be heard.

As indicated earlier, Plaintiffs' motion filed Thursday, September 22, was for a temporary restraining order. Plaintiffs' filings were at least a month in the making, and the documents totaled some 200 pages. Defendants were given one day to respond. On the following Monday, an order issued that "granted" the motion and directed the parties to meet in chambers the following Thursday to "discuss the interim placements for T.L. and A.J.P."

Following the Thursday meeting – informal, off-the-record discussions – Plaintiffs were invited by the Court to submit an order, with a promise of its being signed. Plaintiffs did so the next day, and a Court-signed order indeed issued that same day. As noted at the outset, because of a failure of efile system notification, Defendants were unaware of the Court's September 28 Memorandum Opinion, or any other filing events subsequent to September 26, until Monday, October 3, when the lack of efile notification was addressed with the Court Clerk's Office, and only then rectified.

Procedures applicable to temporary restraining orders vest the Court with great flexibility in how to react to requests for immediate, appropriately justified relief. The

8

Court's discretion in acting on such requests, however, is not unbounded. See generally Fed. R. Civ. P. 65; LCvR 65.1. Service of the TRO papers on a defendant is required under Local Rule 65.1(a), but none of the attachments to Plaintiffs September 22 motion was received by Defendants until September 23, some have not yet been received, and none has been available on the efile system. Federal Rule 65(c) requires the posting of a bond, but none was posted here. And the duration of a temporary restraining order is limited to the time necessary to consider the propriety of such relief as a preliminary injunction.

Where a preliminary injunction is sought, the applicable procedures (Fed. R. Civ. P. 65(a), LCvR 65.1(d)) require a hearing, and a reasonable opportunity for both parties to address the facts and issues involved. Here, Defendants were given one day – from mid-morning Friday to 10:00 a.m. Saturday, during most of which DCPS personnel were unavailable – to respond to Plaintiffs' motion.

The Court's September 30 order is said to be based on "additional arguments presented by the parties' counsel at the meeting convened in the Court's jury room on September 29, 2005, and upon consideration of the views expressed at that meeting with regard to this court's September 28, 2005, Memorandum Opinion." But in fact, because of a failure of efile system notification, Defendants were unaware of the September 28 Memorandum Opinion at the time, and neither did, nor could have, expressed views on it. Nor was there any reference by any person in attendance that a decision had been issued on September 28, which would at least have alerted Defendants to a matter they might be expected to address.

Nor were there any "arguments," as that word is commonly understood in legal practice, presented on September 29 by Defendants' (or Plaintiffs') counsel on the issues raised by Plaintiffs' motion; the meeting was an off-the-record discussion of "T.L. and A.J.P.'s placements pending the administrative process," as directed by the September 26 order, and attended by both counsel and client representatives. The September 29 meeting was never billed as an opportunity to present either facts, recommendations or legal arguments to the Court on the propriety of the relief Plaintiffs had requested, or as a "record" proceeding in any sense.

At footnote 1, the Court's September 28 Memorandum Opinion recharacterized Plaintiffs' motion in the following terms:

> Although the plaintiffs characterize their motion as one for a temporary restraining order, the plaintiffs are asking the court to enforce their rights to remain at their current educational placement. Accordingly, the court treats their motion as one for a stay put injunction.

However, calling Plaintiffs' filing a motion for a "stay put injunction" does not automatically obviate all TRO/PI procedural requirements, or vitiate Defendants' minimum due process right to be heard. Other than (arguably) the applicability of the traditional 4-part test, there is no body of law, or customary practice, establishing a discrete procedural regimen for "stay put injunctions." The ultimate demand in all injunctive proceeding is at least to base a decision on an adequately developed record, and to assure a judicial understanding of the parties' positions on governing factual and legal issues through a reasonable opportunity for the parties to be heard.

Yet that requirement was simply not met here. For example, while the September 28 Memorandum Opinion based its conclusions squarely on determinations that "the

10

defendants do not dispute that T.L. is not enrolled in a similar program [to that earlier attended]," and that "the defendants do not dispute that A.J.P. is not enrolled in a similar program [to that earlier attended]" (Mem. Op. at pp. 7, 8), Defendants never had the opportunity to address those matters, or to know that the Court would take silence on such matters in the single Defendants' pleading permitted as decisionally dispositive. While the Court ultimately placed the students based, presumably, on Plaintiffs' more-than-200-pages of pleadings and attachments, Defendants had less than a business day to evaluate and respond to those matters, or to know in advance on what the Court would rely, so that an appropriate response could be prepared. And ultimately, Defendants were never given the opportunity, in on-the-record proceedings, to present its views on what it believed to be "comparable placements."

Defendants respectfully submit that, particularly in the atypical circumstances here – where the two students *could not* return to their earlier placement, and the "stay put" placement to be determined would in fact be a *new location* – the Court's summary acceptance of Plaintiffs' demands without a meaningful opportunity for Defendants to be heard on the educational adequacy of any new location was arbitrary and unreasonable. Defendants had one less-than-24-hour opportunity to file an opposition to a voluminous motion worked on by Plaintiffs for a month. The Court directed discussions between the parties four business days later. And one day thereafter, without any further record proceedings, or hearing argument, the Court proceeded to itself make an educational judgment in the first instance of the "comparability" of Plaintiffs' requested placements to the students' prior locations, based on their earlier IEPs—and without considering Defendants' views in those respects. Indeed, in one of the two cases, the Court simply

11

left to the parent the discretion to choose whatever pre-school location or program they'd like, at the District's expense.

In the normal course, the matter of stay-put location is invoked at the administrative level. At least two courts in this district have held that a federal district court lacks jurisdiction even to consider the applicability of the stay-put provisions until a plaintiff has identified, "*at the administrative level*," at least one specific fundamental change in the programs DCPS is currently funding on his or her behalf. See Moss v. Smith, 794 F.Supp. 11, 14 (D.D.C. 1992)(dismissing case sua sponte for lack of jurisdiction where plaintiffs failed to exhaust administrative remedies, and therefore "no proceeding pursuant to §1415 [was] pending")(emphasis added); Roher v. District of Columbia, Civ. Nos. 89-2425, 89-2503, 1989 WL 330800 (D.D.C. Oct. 11, 1989)(dissolving injunctions and dismissing case on jurisdictional grounds where plaintiffs failed to exhaust administrative remedies, instead providing merely "conclusory allegations that the proposed situs change was inappropriate and tantamount to a change in educational placement").

But even if it were appropriate for this Court to consider location/program comparability or appropriateness at this time, and the Court believed that immediate action needed to be taken, the Court might well direct an immediate DCPS comparability determination. However, to the extent the Court undertakes to make essentially educational judgments in the first instance, Defendants respectfully submit that the Court is at least obligated, before reaching any final conclusions, to permit those having the educational expertise to be heard on what the Court contemplates, before it is ordered. And again with all due respect, the Court did not do so in this case.

**III. The Court's Action was Inconsistent with Statutory Requirements Relating to Placements.**

Defendants, in fact, proposed interim ("comparable") placements for both students during the September 29 discussions. Both programs were thoroughly explained to the students' guardians. Judge Urbina was not present in the jury room during these discussions and did not hear a description of the programs or the programs' abilities to implement the students' IEPs. Moreover, when the Judge returned, he did not give Defendants an opportunity to explain the programs to him, or hear why the programs were "comparable" based on the students' 2004-2005 IEPs. Yet Defendants were prepared to present sworn testimony from representatives knowledgeable about DCPS' special education programs in that connection.

38 D.C. Code §2501(c) provides that special education placements shall be made in the following order of priority provided that the placement is appropriate for the student:

(1) DCPS schools or District of Columbia public charter schools;
(2) Private or residential District of Columbia facilities; and
(3) Facilities outside of the District of Columbia.

Thus, DCPS is required to consider a student's neighborhood school first, the next closest neighborhood school, public citywide center programs, and private schools located in the District of Columbia before seeking placement outside the District of Columbia. As a result, DCPS selected Woodson SHS in the District of Columbia, to implement T.L.'s 2004-2005 IEP.

This Court placed T.L. in a private institution located in Maryland, without giving Defendants the opportunity to present an alternative public placement in the District of Columbia, as required by statute.

13

As to A.J.P., the Court ordered Defendants to fund all related services and supplemental aids listed on the student's 2004-2005 IEP, services to be provided **"by service providers identified by [A.J.P.'s mother], provided to him at the pre-school of [the mother's] choice, and paid for by the defendant."** *See Order, September 30, 2005, p. 2.* Thus, Defendants must fund providers, whose qualifications are unknown to either Defendants or the Court, at an, as yet, undesignated pre-school that neither Defendants nor the Court know can implement the student's IEP. In fact, Plaintiffs are not even required to tell Defendants what school A.J.P. is attending.

34 C.F.R. §300.550 – 556 and 20 U.S.C. §1412(a)(5) require that Defendants place a student with disabilities in the least restrictive educational environment; ensure that the placement decision is made by a group of persons knowledgeable about the child, the meaning of the evaluation data, and the placement options; ensure that a student's placement is made in accordance with §300.550; ensure that the providers are fully informed about their responsibilities; and requires Defendants to monitor activities to be certain all placement decisions are made in accordance with the statutes. Nevertheless, despite these statutorily imposed requirements, this Court has completely removed Defendants from the equation in the case of A.J.P., and has rendered Defendants unable to fulfill its statutorily imposed responsibilities. Defendants can only sit on the sidelines and dole out funds, within 15 days of receipt of each provider's invoice, no less, to providers who may or may not be qualified to provide services to A.J.P., at a school which may or may not be able to implements his IEP.

**CONCLUSION**

Defendants submit that a stay put injunction is not automatic, and that Plaintiffs' motion is not exempt from the traditional four-part test for interim injunctive relief. In their motion, Plaintiffs did not argue that their injunctive request met the four-part criteria. Thus, Plaintiffs' motion should not have been granted on that basis alone. In addition, the Court's process was inconsistent with requirements applicable to requests for injunctive relief, and denied Defendants' fundamental due process right to be heard. Finally, the Court's action prohibited Defendants from fulfilling their statutory obligations to participate in school placement decisions, and monitor activities to be certain that all placement decisions are made in accordance with the statutes.

Accordingly, Defendants respectfully request that this Court grant Defendants motion to alter or amend judgment, vacate its September 26 and 29th Orders, and allow Defendants an opportunity to present comparable educational placements for T.L,. and A.J.P. either in writing or in an evidentiary hearing.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District
 of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Chief, Equity Section 2

                 /s/ *Veronica A. Porter*_____
                 VERONICA A. PORTER (412273)
                 Assistant Attorney General
                 441 4th St., N.W., Sixth Floor South
                 Washington, D.C. 20001
                 (202) 724-6651

**October 14, 2005**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **BETTY LASTER, et al.,** : | |
| Plaintiffs : | |
| v. : | Civ. Action No. 05-1875 (RMU) |
| **DISTRICT OF COLUMBIA, et al.,** : | |
| Defendants. : | |

**AMENDED ORDER**

Upon consideration of Defendants' Motion to Alter or Amend Judgment, Plaintiff's response thereto and the record herein, it is by the Court this _____ day of _____, 2005,

**ORDERED**: That Defendants' motion to alter or amend the September 30, 2005, Order is GRANTED; it is

**FURTHER ORDERED**: The Court's September 30, 2005 Order is vacated; it is

**FURTHER ORDERED**: That Defendants submit placements comparable to T.L.'s and A.J.P.'s 2004-2005 IEPs within five days from the date of this Order. The submissions should include the name of each student's school, describe in detail the programs offered, and an explanation of why the school's program is appropriate to meet the needs of T.L.'s and A.J.P.'s 2004-2005 IEPs.; it is

**FURTHER ORDERED**: Plaintiffs shall submit any objection to Defendants' proposed placements within five days after Defendants' submissions; it is

**FURTHER ORDERED**: Any further proceedings are subject to future Court Orders.

**SO ORDERED**.

_____
UNITED STATES DISTRICT COURT JUDGE