BETTY LASTER, et al., )
)
Plaintiffs, )
)
v. ) Civil Action No. 5-1875(RMU)
)
DISTRICT OF COLUMBIA, et al., )
)
Defendants. )
_____ )

DECLARATION OF LESLIE T. JACKSON

I, Leslie T. Jackson, a citizen of the United States over the age of eighteen years, declare as follows:

1. I am a Plaintiff in this action and am the mother of A.J.P.

2. On September 29, 2005 I attended a conference with DCPS in the jury room of Judge R.M. Urbina.

3. The conference began at 10:00 a.m. I entered the jury room with my attorney, Karen D. Alvarez, and Mrs. Betty Laser. Already in the jury room were counsel for DCPS, Ms. Porter, Ms. Judith Smith, Vicki Williams, Zondra Johnson, Keesha Blythe, and Kevin Foreman.

4. After all present introduced themselves, Ms. Alvarez expressed surprise at the presence of Mr. Foreman and Ms. Wilson. Ms. Alvarez asked that they leave the room, since representatives of DC Alternative Learning Academy and Barnard Autism Program had no reason to attend.

5. Ms. Smith stated that representatives of the Alternative Learning Academy and of the Barnard Autism Program were properly present because DCPS was proposing

the Alternative Learning Academy and the Barnard Autism Program as Stay Put placements for the Plaintiff children.

6. Ms. Alvarez objected to their presence again, and told Ms. Smith that the Court's Order barred placement of the children at those schools. Ms. Smith insisted that the Court's Order permitted placement there.

7. Ms. Alvarez left the room to advise Chambers that DCPS was proposing placements at the Alternative Learning Academy and the Barnard Autism program.

8. When Ms. Alvarez returned, Mr. Foreman described the DC Alternative Learning Academy program.

9. Judge Urbina then entered and sat down at the conference table. I recall one of the DCPS staff present stating that DCPS had not understood that the Court's Order required that the Stay Put placements implement the 2004-2005 IEPs, and that DCPS had been under the impression that the Stay Put placements were to implement the 2005-2006 IEPs. Judge Urbina discussed the findings and holdings of his Order. Judge Urbina told the parties that he expected them to discuss the placement matter for a minimum of 45 minutes to see if they could agree on Stay Put placements for the children in accordance with the Court's Order. Judge Urbina then left.

10. After Judge Urbina left, Ms. Smith stated that DCPS proposed a placement for AJP at Garrison ES. I objected to that program as one that DCPS had proposed in the Spring of 2005 and rejected previously. I had filed a due process complaint in response to that proposed placement. DCPS and I reached a settlement of that case in May 2005 that did not envision a renewal of DCPS' proposal to place AJP at Garrison. A Hearing Officer accepted that Settlement Agreement and ordered that AJP Stay Put at his inclusion placement which is not Garrison. Ms. Smith insisted that the Settlement Agreement and the Hearing Officer's Determination did not prevent DCPS from again proposing Garrison as a placement. I objected that Garrison was not an inclusion program. Ms. Smith agreed that Garrison was not an inclusion program, but a non-categorical special education program, and stated that DCPS would not offer AJP an inclusion program.

11. Ms. Smith called Garrison and put Ms. Elliot on the line. Ms. Elliot said she knew nothing about AJP. She said that at that moment there were no students in the Garrison program, so that AJP would be entirely alone in that program.

12. There followed a discussion of T. L.'s placement, the tenor and thrust of which was much the same.

13. After this discussion had gone on for more than the time allotted by the Judge, Ms. Alvarez stated that she saw no use for further discussion. She stated that she would inform Chambers that we were at an impasse. She left the room.

14. Ms. Alvarez returned and stated that she understood that Judge Urbina would come in when he was available. We waited for some minutes.

15. Judge Urbina then entered the room.

16. Ms. Smith reviewed for Judge Urbina DCPS' proposed Stay Put placements at Garrison and Woodson. Ms. Alvarez stated that the Garrison placement was the same non-inclusionary placement that DCPS had proposed in Spring 2005 and which the parent and the Hearing Officer's Determination had rejected as a Stay Put placement in May 2005.

17. Ms. Alvarez summarized the parents' objections to the DCPS placements and pointed out the respects in which each of the two proposed placements deviated from the

programs the children had enjoyed in 2004-2005.
18. Ms. Smith argued that the 2004-2005 IEPs determined only the number of hours of specialized instruction to which AJP was entitled. Ms. Smith again argued that A.J.P. could not go to an inclusion placement, despite the fact that his 2004-2005 IEP expressly stated that he required an inclusion placement, and argued that the only part of the 2004-2005 IEP that mattered was the number of hours of specialized instruction that it called for.
19. There were arguments and discussions with regard to DCPS' proposal to place T.L. at Woodson SHS.
20. Ms. Smith seemed to argue that DCPS was not required to propose a placement, either for A.J.P. or T.L., that was equivalent to the program and placement that the children had during 2004-2005, but only to propose a placement that provided the same number of hours of special education instruction, and that provided solely what DCPS considers appropriate, orders or settlement agreements notwithstanding.
21. After some time without DCPS' offering a Stay Put placement that was in line with the children's 2004-2005 IEPs and placements, and in line with the Court's Stay Put Order, Judge Urbina stopped the discussion.
22. He ordered Ms. Alvarez to prepare a proposed order and to file that proposed order by noon on Friday, the 30th.
23. At no point did DCPS request additional time to be heard, or say anything that suggested that they would offer or consider any Stay Put placements other than the two that they proposed.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT

Date Leslie T. Jackson