UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BETTY LASTER *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 05-1875 (RMU) |
| | : | | |
| v. | : | Document No.: | 14 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

DENYING THE DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT

I.  INTRODUCTION

This Individuals with Disabilities Education Act ("IDEA") case comes before the court on the defendants' motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b).[1]  The plaintiffs, handicapped children and their parents and guardians, filed a motion for a stay put injunction to prevent the defendants, the District of Columbia and the District of Columbia Public Schools ("DCPS"), from unilaterally modifying the students' current school placement.[2]  Because the defendants' proposed placements modified the students' Individualized

---

[1] The defendants bring their motion under Federal Rule of Civil Procedure 59(e), which requires parties to file motions within ten days of the challenged order. Because the defendants filed their motion more than ten days after the challenged order, the court analyzes the defendants' motion under Federal Rule of Civil Procedure 60(b).  *McMillian v. Dist. of Columbia*, 2005 WL 3370820, at *1 n.1 (D.D.C. Dec. 13, 205) (explaining "that a motion filed within ten days of the district court's entry of judgment is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) and a motion filed ten days after the district court's entry of judgment is treated as a motion for relief under Federal Rule of Civil Procedure 60(b)") (citing *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir. 1997)).

[2] Under the Individuals with Disabilities Education Act ("IDEA"), a parent who objects to her child's educational placement may file an administrative due process complaint requesting review of the placement decision.  20 U.S.C. § 1415(b) – (d).  A stay put injunction allows a student to remain at his or her current school pending administrative review of the child's educational placement.  20 U.S.C. § 1415(j); *Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1023 (D.C. Cir. 1989).

Education Plans ("IEP"),[3] the court granted the plaintiffs' motion for a stay put injunction. The defendants now move the court for relief from judgment under Federal Rule of Civil Procedure 60(b). Because the court applied the correct legal standard in analyzing the plaintiffs' motion for a stay put injunction, because the court entered the stay put injunction after the defendants received adequate notice, and because the stay put injunction does not violate the defendants' statutory rights, the court denies the motion to relieve the defendants from the judgment.

## II. BACKGROUND

### A. Factual Background

The instant motion relates to two of the plaintiffs, T.L. and A.J.P., both special education students in the District of Columbia.[4] Mem. Op. (Sept. 28, 2006) ("Mem. Op.") at 2. T.L. is sixteen years old and brings suit through his grandmother and legal guardian, Betty Laster. *Id.* T.L.'s May 2004 IEP concluded that T.L. should attend Kingsbury Day School ("KDS") because he "requires small group instruction, individualized education and integrated related services." *Id*. On July 28, 2005, Laster and various school officials met to discuss T.L's IEP for the 2005-2006 school year. *Id.* At this meeting, DCPS changed "T.L's classification from 'learning disabled' to a primary classification of 'learning disabled' with a secondary classification of

---

[3] A disabled child's Individualized Education Plan ("IEP") is a comprehensive educational plan designed at annual meetings by the parents or legal guardians, teachers, school district and other professionals (collectively, the "IEP team") tailored for each disabled child's needs. 20 U.S.C. §1414(d). The IEP "sets forth the child's educational level, performance, and goals and is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996).

[4] The court's order also granted a stay put injunction for a third disabled child, C.A. The defendants' instant motion, however, does not ask the court to reconsider the portion of the order that pertains to C.A. Defs.' Mot. to Alter J. ("Defs.' Mot.").

'emotionally disturbed.'" *Id*. Because of the change in T.L.'s classification, KDS refused to admit him. Pls.' Mot. for Stay Put Inj. at 3. DCPS notified Laster that it was placing T.L. at the D.C. Alternative Learning Academy ("DCALA") as an alternative to KDS. Mem. Op. at 7. Laster informed DCPS that she disagreed with T.L's placement at DCALA. *Id*. On September 9, 2005, Laster filed an administrative due process complaint challenging the IEP and T.L.'s placement at DCALA. *Id*.

A.J.P. is four years old and brings suit through his mother, Leslie T. Jackson. Mem. Op. at 3. In August 2004, A.J.P.'s IEP for the 2004-2005 school year stated that he should attend the "inclusion nursery school program" at Stoddert Elementary School. *Id*. Stoddert Elementary School, however, no longer offers its inclusion program. *Id*. On August 10, 2005, DCPS issued a new IEP placing A.J.P. in the citywide autism program at Barnard Elementary School. *Id*. The IEP also changed A.J.P.'s classification from developmentally delayed to autistic. *Id*. Jackson disputes the classification change and the new placement at Barnard Elementary School. *Id*. As a result, she filed an administrative due process complaint on September 13, 2005. *Id*.

### B. Procedural Background

After filing administrative due process complaints, the plaintiffs filed a civil suit alleging violations of their stay put rights on September 22, 2005. Mem. Op. at 4. In conjunction with their civil suit filings, the plaintiffs requested stay put injunctions to prevent the defendants from modifying the students' current IEP placements. *Id*. On September 23, 2005, the court ordered an expedited briefing schedule. *Id*. The court subsequently determined that the alternative placement facilities proposed by the defendants were not substantially similar to the children's current schools. *Id*. Because the defendants are required to find a substantially similar placement when an IEP placement becomes unavailable, the court granted the plaintiffs' motion

for a stay put injunction on September 26, 2005. *Id*. In addition to granting the motion for an injunction, the court ordered the parties to meet on September 29, 2005 to discuss potential stay put placements, but the parties were unable to reach an agreement. On October 14, 2006, the defendants filed a motion for relief from judgment. The court now turns to that motion.

### III.  ANALYSIS

#### A.  Legal Standard for Relief under Federal Rule of Civil Procedure 60(b)

In its discretion, the court may relieve a party from an otherwise final judgment pursuant to any one of six reasons set forth in Rule 60(b). FED. R. CIV. P. 60(b); *Lepkowski v. Dep't of Treasury*, 804 F.2d 1310, 1311-12 (D.C. Cir. 1986). First, the court may grant relief from a judgment involving "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b). Such relief under Rule 60(b) turns on equitable factors, notably whether any neglect was excusable. *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship*, 507 U.S. 380, 392 (1993). Second, the court may grant relief where there is "newly discovered evidence" that the moving party could not have discovered through its exercise of due diligence. FED. R. CIV. P. 60(b). Third, the court may set aside a final judgment for fraud, misrepresentation, or other misconduct by an adverse party. *Id*.; *Mayfair Extension, Inc. v. Magee*, 241 F.2d 453, 454 (D.C. Cir. 1957). Specifically, the movant must show that "such 'fraud' prevented him from fully and fairly presenting his case," and that "the fraud is attributable to the party or, at least, to counsel." *Richardson v. Nat'l R.R. Passenger Corp.*, 150 F.R.D. 1, 7 (D.D.C. 1993) (Sporkin, J.) (citations omitted). Fourth, the court may grant relief where the judgment is "void." FED. R. CIV. P. 60(b). A judgment may be void if the court lacked personal or subject-matter jurisdiction in the case, acted in a manner inconsistent with due process, or proceeded beyond the powers granted to it by

law. *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 871 (4th Cir. 1999). Fifth, the court may grant relief if the "judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed . . . or it is no longer equitable that the judgment should have prospective application." FED. R. CIV. P. 60(b); *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (noting that not all judgments having continuing consequences are "prospective" for the purposes of Rule 60(b)). Sixth, the court may grant relief from a judgment for "any . . . reason justifying [such] relief." FED. R. CIV. P. 60(b). Using this final catch-all reason sparingly, courts apply it only in "extraordinary circumstances." *Pioneer Inv. Servs.*, 507 U.S. at 393.

A party proceeding under one of the first three reasons must file his Rule 60(b) motion within one year after the judgment at issue. FED. R. CIV. P. 60(b). A party relying on one of the remaining three reasons may file his Rule 60(b) motion within a reasonable time. *Id*. The party seeking relief from a judgment bears the burden of demonstrating that he satisfies the prerequisites for such relief. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002).

### B. The Court Denies the Defendants' Motion

The defendants make a number of arguments in their motion for relief from judgment. First, the defendants argue that the court applied the wrong legal standard in granting the stay put injunction. Defs.' Mot. to Alter J. ("Defs.' Mot.") at 6. Second, the defendants contend that their due process rights were violated because they did not receive adequate notice of the plaintiffs' request for a stay put injunction. *Id.* at 8. Last, the defendants argue that the court's decision precludes them from participating in the IEP process. *Id.* at 13. For the following reasons, the court denies the defendants' motion for relief from judgment.

**1. The Court Applied the Correct Legal Standard in Granting the Stay Put Injunction**

The defendants argue that the court committed a mistake of law in treating the plaintiffs' request for a stay put injunction as an automatic injunction. According to the defendants, the court should have applied the four part test typically used in analyzing motions for preliminary injunctions. Defs.' Mot. at 7. The IDEA's stay put provisions, however, explicitly state that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child *shall* remain in the then-current educational placement of such child." 20 U.S.C. § 1415(j) (emphasis added). Moreover, courts have consistently interpreted the stay put provision to be an automatic injunction.[5] *Casey K. ex rel. Norman K. v. Saint Anne Cmty High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case ); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (stating the stay put provision "functions, in essence as an automatic preliminary injunction"); *Wagner v. Bd. of Educ. of Montgomery County*, 335 F.3d 297, 301 (4th Cir. 2003) (noting that an "injunction is automatic").

The purpose of the stay put injunction is to prevent educational authorities from unilaterally moving a child from his or her current placement. *Honing*, 484 U.S. at 306, 308. If the court were to accept the defendants' interpretation of the rule, it would nullify Congress's purpose – preventing unilateral action by school officials – unless a plaintiff could make a favorable showing on the four preliminary injunction factors. *Bd. of Edu. of Comm. High Sch.*

---

[5] This is not to say that the traditional four part test for preliminary injunctions is entirely inapplicable to stay put injunctions. A party attempting to change the current placement of the child in a manner inconsistent with the current IEP will be required to meet the four factor preliminary injunction test. *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 917 (1st Cir. 1983) (requiring a school board that ceased funding for the last agreed upon IEP placement to meet the traditional four part preliminary injunction test).

*Dist. No. 218, Cook County, Ill. v. Ill. State*, 103 F.3d 545, 549-550 (7th Cir. 1996) (noting that to impute the equitable factor test into the stay put provision would undermine the statutory framework).[6] In short, the court properly granted the plaintiffs' stay put injunction without requiring the plaintiffs to meet the four part test typically applied to motions for injunctive relief.

### 2. The Defendants Received Adequate Notice

The defendants also argue that the court should alter its judgment because they did not receive adequate notice of the plaintiffs' motion for a stay put injunction.[7] Defs.' Mot. at 8. Because a preliminary injunction may be unlimited in duration, notice to adverse parties is required. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 432 n.7 (1974). Notice should be sufficient to give an opposing party an opportunity to respond and prepare an opposition to the motion for injunctive relief. *Id*. District court judges have substantial discretion in managing the timing of preliminary

---

[6] The defendants rely on *Honing v. Doe* and *Henry v. School Administration Unit No. 29* to argue stay put injunctions are subject to the four part traditional preliminary injunction test. Defs.' Mot. at 6-7. The defendants, however, misunderstand the language in the forgoing cases. Both cases indicate that the IDEA's stay put provision creates a presumption in favor of the child's current placement, but the school district may overcome the presumption if it can demonstrate that application of the traditional four part preliminary injunction test warrants a different result. *Honing v. Doe,* 484 U.S. 305, 327 (1988); *Henry v. Sch. Admin. Unit No. 29*, 70 F. Supp. 2d 52, 58 n.5 (D.N.H. 1999). In this case, the defendants have not shown that the traditional four part preliminary injunction test requires a different result.

[7] The defendants also contend that the court erred in not ordering the plaintiffs to post a bond under Federal Rule of Civil Procedure 65(c). Defs.' Mot. at 9. Bonds are sometimes required for the payment of costs and damages that may be incurred or suffered by a party who is wrongfully enjoined. FED. R. CIV. P. 65(c). In this case, the court was not required to order the plaintiffs to post a bond. First, the defendants never requested a bond. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003) (stating "[a] judge could dispense with the bond requirement when no request for a bond was ever made in district court"). Second, only a party seeking to change (not maintain) the status quo needs to post a bond. *See e.g., Bd. of Educ. of Oak Park and River High Sch. v. Ill. State Bd. of Educ. and Kelly E.*, 10 F. Supp. 2d 971, 982 (N.D. Ill. 1998) (requiring parents of disabled children who sought to change the child's current placement to post a nominal bond of ten dollars), *vacated in part on other grounds*, 207 F.3d 931, 938 (7th Cir. 2000); *Stockton by Stockton v. Barbour County. Bd. of Educ.*, 884 F. Supp. 201, 208 (N.D. W.Va. 1995) (ordering parents of disabled child who sought to change child's status in contravention of the IEP to post a $10,000 bond to obtain a preliminary motion).

injunctions. *Ciena Corp. v. Jarrad*, 203 F.3d 312, 319 (4th Cir. 2000). Because injunctions are usually time sensitive, courts determine the length of notice needed based on the urgency of the factual circumstances and the time available. *Id*. at 319-320.

Because of the high risk of irreparable injury to the children involved, the court regarded the present case as particularly time sensitive, requiring expedited attention. *Blackmun v. Dist. of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003) (noting that each day students lack an appropriate education that is "sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling their immediate needs constitutes irreparable harm"). Additionally, the present case involved atypical circumstances because both T.L. and A.J.P.'s current placements were unavailable and the parents of both students disagreed with the defendants' suggested substitute schools. Mem. Op. at 7. The unavailability of the students' last placement coupled with the parties' inability to agree on a substantially similar placement heightened the court's concern over the plaintiffs' right to a free and public education. Based on the circumstances of the case, and the potential harm to the children, the court allotted the amount of time it deemed sufficient to both parties.

The defendants further assert that "failure of the efile notification system" contributed to their denial of due process. Defs.' Mot. at 8-9. Specifically, the defendants contend that they did not receive e-mail notice of the court's September 28, 2005 memorandum opinion. *Id*. As a result, the defendants state that they arrived at the September 29, 2005 meeting unaware that an opinion had been issued the previous day and unprepared to express their opposing views. *Id*.

It is a party's duty to monitor the docket regardless of a lack of email notification. *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004). The excuse that the electronic case filing system was malfunctioning is unacceptable and unconvincing. *Id*. (analogizing a party's

claim that counsel never received notice because the electronic case filing system malfunctioned to "an updated version of the 'my dog ate my homework' line"); *see also McMillian v. Dist. of Columbia,* 2005 WL 3370820, at *2-3 (D.D.C. Dec. 13, 2005) (quoting *In re Mayhew*, 223 B.R. 849, 856 (D.R.I. 1998) for the proposition that "it is the attorney's duty to monitor the docket and 'that an attorney may not simply sit back and rely on the court to keep him or her up to date'").

Moreover, aside from stating that they were only given a short period of time to respond to the plaintiffs' request for a stay put injunction, the defendants have not stated what effect, if any, the expedited briefing schedule had on their ability to oppose the plaintiffs' motion. *Sparshott v. Feld Entm't, Inc.,* 311 F.3d 425, 433 (D.C. Cir. 2002) (stating a party arguing that time limits are unfair must show prejudice). Because the defendants received adequate notice and because the defendants do not show that the expedited briefing scheduled affected their ability to oppose the plaintiffs' motion, the court declines to alter or amend its judgment.

### 3. The Court's Order does Not Violate the Defendants' Statutory Rights

Last, the defendants argue that the court's order excludes them from participating in the selection of both children's alternative school placement, thus violating their statutory rights. Defs.' Mot. at 13-14. Here, however, the court did not deny the defendants the right to participate in the IEP process. Rather, the court compelled the defendants to comply with the statutory obligations of finding a substantially similar placement.

The creation of an IEP under the IDEA is a collective effort among parents, teachers, the school district and other professionals. Mem. Op. at 4. The parties involved have separate and important roles in the process. For instance, if a student's current educational placement becomes unavailable, it is the role of educational authorities to provide the student with a similar

placement pending administrative and judicial approval of its alternative placement plans.[8] *Knight by Knight v. Dist. of Columbia*, 877 F.2d 1025, 1028 (D.C. Cir. 1989) (stating that DCPS must provide child with a similar placement pending administrative procedures); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985) (explaining that because DCPS disagreed with the alternative placement proposed by child's parents, it was obligated to provide a new, similar placement).[9]

Although the defendants suggested alternative placement programs for T.L. and A.J.P., these programs were not substantially similar to the children's current placement. Mem. Op. at 8, 9. In the case of T.L., the placement suggested by the defendants substantially reduced or eliminated the related services and supplemental aids he received at his current placement. Mem. Op. at 7. With respect to A.J.P., the school board's proposed alternate placement in an autism program was much more restrictive than placement at an inclusion pre-school classroom in a language-intensive program. Mem. Op. at 8.

The defendants argue that the court's order violates their statutory rights because it permits the plaintiffs to unilaterally select a substitute school for the child without the defendants' input. Defs.' Mot. at 13-14. But, the defendants do not have a statutory right to

---

[8] Parents may invoke the stay put provision whenever educational authorities propose a "fundamental change in, or elimination of, a basic element of the [then-current education placement]." Mem. Op. (Sept. 28, 2006) ("Mem. Op.") at 5 (citing *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)). When a new IEP has been issued but contested or a change has been proposed and contested "the current educational placement is interpreted as the student's placement before the proposed [c]hange." Mem. Op. at 7 (citing *Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 26).

[9] A second role of the school board is to fund a child's education. *Fagan v. Dist. of Columbia*, 817 F. Supp. 161, 164 (D.D.C. 1993) (stating that the school board shall fund a disabled child's education unless an exception applies).

violate their stay put obligations.[10]  In light of the defendants' failure to propose any placement that met the requirements in either child's 2004-2005 IEP, the court determined that the plaintiffs' proposed placements did in fact comply with the children's 2004-2005 IEP.[11]  Furthermore, the defendants do not present any evidence that the new placement is inconsistent with the school criteria stated in either of the children's 2004-2005 IEP.[12]

Here the defendants failed to find a substantially similar placement, as required by the IDEA.  The defendants do not present any new evidence or arguments to counter the court's

---

[10]   Assuming *arguendo* that the court's order permits the parents to act unilaterally, as the defendants argue, Defs.' Mot. at 14, the court still sees no justification to alter the judgment under Federal Rule Civil Procedure 60(b).  Parents may act unilaterally when the school board does not comply with IDEA provisions.  *Block v. Dist. of Columbia.*, 748 F. Supp. 891, 897-898 (D.D.C. 1990) (stating that DCPS lost the right to contest the parent's unilateral actions when it failed to comply with the IEP's requirements).  Here, because the defendants failed to comply with IDEA provisions by not finding a substantially similar placement facility when the children's current facility became unavailable, the parents were entitled to act unilaterally.  *Id.* at 898. (stating "DCPS cannot seriously argue that [the parent] simply should have waited patiently [i]n the hope that DCPS [w]ould save the day").

[11]   The defendants argue that requiring the defendants to compensate Jackson for the cost of the private institution she chose for A.J.P. violates their statutory rights.  Defs.' Mot. at 13.  Parents who challenge the placement selected by school officials, however, may be reimbursed for the tuition paid to the private school if the court agrees with the parents that the school board's selected placement was inappropriate, and that the parent's unilateral action is appropriate under the act.  *Fagan,* 817 F. Supp. at 164 (citing *Sch. Comm. of Town of Burlington v. Dept. of Educ. of the Commonwealth of Mass.*, 471 U.S. 359, 369 (1985)) (concluding that a parent was not entitled to reimbursement for unilaterally placing her child in a private school when the parent did not properly challenge the school board's placement decision and made no showing that the school board's placement choice was inappropriate).  Here, the defendants' proposed placement was inappropriate and the court determined that plaintiffs' proposed placement complied with A.J.P.'s 2004-2005 IEP.  Therefore, the court's order does not violate the defendants' statutory rights.

[12]   The defendants further argue that permitting T.L.'s mother to select a private school for T.L.'s alternative placement prevents them from presenting an alternative public placement in compliance with D.C. Code § 38-2501(c).  Defs.' Mot. at 13.  The statute requires DCPS to make special educational placements in the following order: (1) DCPS schools or DCPS public charter schools; (2) private or residential District of Columbia facilities; and (3) facilities outside of the District of Columbia.  D.C. Code § 38-2501(c).  DCPS must find placement facilities according to the provisions of D.C. Code § 38-2501(c) and must, under the stay put provision, discern whether the selected school is substantially similar to the current placement.  Here, although the school selected by DCPS was a public school, it was not substantially similar to the child's current placement.  Parents are not required to wait until DCPS complies with its statutory obligations before seeking an acceptable facility so the child may continue to receive an education.  *Block*, 748 F. Supp. at 897.

conclusion that their proposed alternate placements do not comply with the IDEA. Accordingly, the court denies the defendants' motion for relief from judgment.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendants' motion for relief from judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of July, 2006.

RICARDO M. URBINA<br>
United States District Judge