# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BETTY LASTER *et al.*,                        :
                                              :
                    Plaintiffs,    :    Civil Action No.:    05-1875 (RMU)
                                              :
            v.                     :    Document No.:    13
                                              :
DISTRICT OF COLUMBIA *et al.*,     :
                                              :
                    Defendants.    :

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS IN PART

## I. INTRODUCTION

The plaintiffs filed this case in September 22, 2005, seeking a stay put injunction[1]

pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*

After the court granted the plaintiffs' motion for a stay put injunction, the plaintiffs moved to

collect $24,030.00[2] in attorneys' fees and $345.56 in costs.  Because the plaintiffs are prevailing

parties and because most (but not all) of the fees requested are reasonable, the court grants the

motion in part and denies the motion in part.

---

[1]         Under the Individual with Disabilities Education Act ("IDEA"), a parent who objects to
her child's educational placement may file an administrative due process complaint requesting review of
the placement decision.  20 U.S.C. § 1415(b) – (d).  A stay put injunction allows a student to remain at his
current school pending administrative review of a child's educational placement.  20 U.S.C. § 1415(j);
*Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1020 (D.C. Cir. 1989)

[2]         The $24,030.00 allegedly represents 82.5 hours of legal work billed at a rate of $295.00
per hour.  The court's calculation, however, is that 82.5 hours billed at a rate of $295 per hour yields
$24,337.50.

## II.  BACKGROUND

The plaintiffs, C.A., A.J.P., and T.L., are three special education students in the District of Columbia and their parents or guardians.  After filing administrative due process complaints, as required by the IDEA, the plaintiffs filed a suit in this court, alleging that the defendants violated their stay put rights.  Mem. Op. (Sept. 28, 2006) ("Mem. Op.") at 4.  In conjunction with filing their complaint, the plaintiffs requested emergency stay put injunctions to prevent the defendants from modifying the students' current IEP placements.[3]  *Id.*  After ordering expedited briefing, the court granted the plaintiffs' emergency motion in an order dated September 26, 2005.  Order (Sept. 26, 2005).  The court's order granting the emergency motion provided the relief requested by plaintiff C.A.  The court also ordered the parties to meet on September 29, 2005 to discuss the IEP placements for plaintiffs A.J.P. and T.L., but the parties were unable to reach an agreement as to the proper IEP placements.  Mem. Op. (May 31, 2006) at 4.  After considering the parties' positions, the court granted A.J.P. and T.L. the relief they sought in their motion for an emergency stay put injunction on September 30, 2005.  Order (Sept. 30, 2006).

After the court issued stay put injunctions, the defendants filed a motion for relief from judgment, which the court denied on July 17, 2006.  The court now turns to the plaintiffs' motion for attorneys' fees and costs.

---

[3]      A disabled child's Individualized Education Plan ("IEP") is a comprehensive educational plan designed at annual meetings by the parents or legal guardians, teachers, school district and other professionals (collectively, the "IEP team") tailored for each disabled child's needs.  20 U.S.C. § 1414(d). The IEP "sets forth the child's educational level, performance, and goals and is the governing document for all educational decisions concerning the child."  *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996).  A parent can invoke the stay put provision when the school system proposes a "a fundamental change in, or elimination of, a basic element of the [then-current IEP]."  *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).

# III.  ANALYSIS

## A.  Legal Standard for Attorneys' Fees and Costs under IDEA

Federal Rule of Civil Procedure 54(d) requires a party seeking attorneys' fees and "related non-taxable expenses" to file a motion with the court.  FED. R. CIV. P. 54(d)(2)(A).  The motion "must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award."  *Id.*  It must also state the amount or provide a fair amount of the award sought.  *Id.*; *see also Herbin v. Dist. of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorneys' fees" so long as they are the "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  A court's determination of the appropriate attorneys' fees, in other words, is based on a two-step inquiry.  First, the court must determine whether the party seeking attorneys' fees is the prevailing party.  *Id.*  A prevailing party "is one who has been awarded some relief by a court."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. Dist. of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court must determine whether the attorneys' fees sought are reasonable.  20 U.S.C. § 1415(i)(3)(B).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. Dist. of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).  The plaintiff bears the burden of demonstrating that the number of hours spent on a particular task is reasonable.  *Holbrook v. Dist. of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C.

3

2004).  The plaintiff may satisfy this burden 'by submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'"  *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  "Once the plaintiff has provided such information, a presumption arises that the number of hours billed is reasonable and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours."  *Herbin*, 2006 WL 890673, at *5.  With respect to the reasonable hourly rate, attorneys' fees in IDEA actions in the District of Columbia are reasonable if they conform to the *Laffey* Matrix[4] created by the United States Attorneys' Office.  *Lopez v. Dist. of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. Dist. of Columbia*, 329 F. Supp. 2d 20, 25 (D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(C) (stating that attorneys' fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

The court notes that the D.C. Appropriations Act of 2005 caps the District of Columbia's payment of IDEA attorneys' fees at $4,000 per action.  Pub. L. No. 108-335, 118 Stat. 1322 (2004); *see also Herbin*, 2006 WL 890673, at *2.  Although the District of Columbia is limited in the award it may pay, the court is not bound by a fee cap and may award attorneys' fees and costs greater than the fee cap.  *Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000).  The court, however, "cannot order the defendants to violate an act of Congress to pay the total award."  *Scorah v. Dist. of Columbia*, Civ. No. 03-0160, Mem. Op. (Dec. 17, 2004).

---

[4]         The *Laffey* Matrix is "a schedule of charges based on years of experience."  *Herbin v. Dist. of Columbia*, 2006 WL 890673, at *4 (D.D.C. Apr. 4, 2006).

**B.  The Plaintiffs are Prevailing Parties**

The plaintiffs argue that they are the prevailing parties because the court granted the

relief they requested in their complaint and in their motion for a stay put injunction.  Pls.' Mot. at

3.  The defendants, on the other hand, argue that the plaintiffs are not prevailing parties.  Defs.'

Opp'n at 3.  Specifically, the defendants argue that although the plaintiffs "might be deemed

prevailing parties with respect to [the motion for a stay put injunction]," the "action represented

by the Complaint remains pending, and has not yet been addressed."[5]  *Id.*

"[A] 'prevailing party' is one who has been awarded some relief by the court."

*Buckhannon*, 532 U.S. at 603.  That is, a prevailing party must show that there has been some

"court-ordered change in the legal relationship between the plaintiff and the defendant."  *Thomas*

*v. Nat'l Sci. Found.*, 330 F.3d 486, 492 (D.C. Cir. 2003) (citing *Buckhannon*) (internal

punctuation omitted).  Although the defendants argue that the court has not yet ruled on the

merits of the complaint, the plaintiffs' motion for a stay put injunction is premised on the same

allegations contained in the complaint.  *Compare* Compl. *with* Pls.' Mot. for Stay Put Inj.

Indeed, the plaintiffs filed their complaint and their emergency motion on the same date and

their complaint specifically requests stay put relief, the same relief the plaintiffs requested in

their emergency motion for a stay put injunction and the same relief that this court granted in late

September 2005.  The defendants, moreover, do not dispute that the court has awarded the

---

[5]      The defendants also argue that, should the court grant their motion for relief from
judgment, the plaintiffs would no longer be prevailing parties."  Defs.' Mot. at 3.  Because the court
denied the defendants' motion for relief from judgment on May 31, 2006, it does not consider this
argument.

plaintiffs the judicial relief they requested.  Because the court awarded plaintiffs the relief they

sought, the plaintiffs are prevailing parties for the purposes of IDEA's attorneys' fees provision.

*Buckhannon*, 532 U.S. at 603.

### C. Most of the Fees Sought are Reasonable

The plaintiffs request $24,375.56[6] in attorneys' fees and costs.  Pl.'s Mot. at 1.  The total

amount requested represents approximately 82.5 hours of legal work billed at $295 per hour in

addition to costs for filing, photocopying and parking fees.  Pl.'s Mot. at 4.  The plaintiffs attach

attorney time records detailing how the 82.5 hours of legal work were spent.  Pl.'s Mot. Ex. B.

As stated *supra*, to determine the reasonable attorneys' fees the court should award a

prevailing party, the court should multiply the reasonable hourly rate by the "the number of

hours reasonably expended on the litigation" *Hensley*, 461 U.S. at 424; *see also Blackman*, 397

F. Supp. 2d at 14 (applying *Hensley* in the IDEA context).  Based on the *Laffey* Matrix, the

reasonable hourly rate for an attorney with 20 or more years of experience, such as the plaintiffs'

attorney is $405.  Pl.'s Mot. Ex. B ¶ 2.  Therefore, the court determines that the plaintiffs'

counsel hourly rate of $295 is reasonable.

With respect to the reasonable number of hours expended on the litigation, the plaintiffs

submitted an invoice showing, in great detail, the number of hours their counsel spent on each

task.  The plaintiffs' submission creates a presumption that the number of hours worked by the

attorney are reasonable.  *Blackman*, 397 F. Supp. 2d at 15.  Because the defendants do not

provide any information to contest the plaintiffs' submissions, except for one time entry, the

defendants have not met their burden of rebutting most of the plaintiffs' assertions.

---

[6]     *See* footnote 2, *supra*.

With respect to the contested time entry, the defendants argue that the court should deny the plaintiffs' counsel compensation for her 1.2 hour-long visit to Woodrow Wilson Senior High School on September 28, 2005, alleging that it was "unproductive and unnecessary." Defs.' Opp'n at 4. Although neither party suggested Wilson as an appropriate placement for plaintiff T.L., the plaintiffs' attorney visited that school believing that the defendants would propose it as a stay put placement at the September 29, 2005 conference ordered by this court. Pls.' Reply at 2. Because the defendants failed to propose a stay put placement as required by the IDEA, *see* 20 U.S.C. § 1415(b)(3), the plaintiffs were necessarily required to arrive at the court-ordered conference prepared to propose their own stay put placements. The court accordingly declines to reduce the requested fee award by the cost of the 1.2 hour-long visit to Wilson.

Although the court does not deduct the 1.2 hour-long visit to Wilson from the requested attorneys' fee, the court nevertheless deducts some of the plaintiffs' attorneys' fees. Specifically, the plaintiff's attorney spent a total of 1.7 hours to travel to or from court and 1.5 hours to wait in court for review of the preliminary injunction motion. Pl.'s Mot. Ex. B. "In this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." *Blackman v. Dist. of Columbia*, 397 F. Supp. 2d 12, 16 (D.D.C. 2005). The plaintiffs' counsel bills her time at $295 per hour. The 3.2 hours spent traveling to and from court and waiting in court are accordingly billed at $147.50 per hour.

7

Multiplying the plaintiffs' attorney $295 hourly rate with the 79.3[7] hours reasonably expended in the litigation yields a sum of $23,393.50 in reasonable attorneys' fees for legal work. Because the plaintiff spent 3.2 hours in travel and waiting time, and because the appropriate hourly rate for that time is $147.50, the court further awards $472 in attorneys' fees. The plaintiff also spent $345.56 in filing, photocopying, and parking fees, Pls.' Mot. Ex. A, which the court concludes were reasonably necessary to litigating this action. The court accordingly awards the plaintiffs a total of $24,211.06 in attorneys' fees and costs.

Because the D.C. Appropriations Act of 2005 caps the amount that the defendants may pay for attorneys' fees and costs at $4,000 and because the court cannot order the defendants to violate an act of Congress, the court's order, issued contemporaneously with this Memorandum Opinion, only requires the defendants to pay $4,000 per plaintiff.

---

[7]     Although the plaintiffs' attorney worked a total of 82.5 hours on this case, 3.2 of those hours were spent on travel and wait time. Pls.' Mot. Ex. A. Therefore, the plaintiffs' attorney spent a total of 79.3 hours working the legal issues of this matter.

**IV.  CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part the plaintiffs' motion

for attorneys' fees and costs.  An order consistent with this Memorandum Opinion is issued this

25th day of July, 2006.


                                                    RICARDO M. URBINA
                                                    United States District Judge