**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BETTY LASTER *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 05-1875 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 57, 60, 61, 68 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING THE PLAINTIFF'S MOTION FOR MODIFICATION OF THE COURT'S
SEPTEMBER 30, 2005 ORDER AND RELIEF FROM THE OCTOBER 10, 2006 ORDER; GRANTING
THE DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT OR ORDER; DENYING AS MOOT
THE PLAINTIFF'S MOTION FOR CONTEMPT AND MOTION FOR A TRO

### I.  INTRODUCTION

This case comes before the court on the parties' competing motions for relief from judgment and the plaintiff's additional motions for contempt and a temporary restraining order ("TRO").  The plaintiff, A.J.P. is 7 years old and brings suit through his mother, Leslie T. Jackson, against the District of Columbia and the superintendent of the District of Columbia Public Schools ("DCPS").  Jackson is proceeding *pro se* and alleges that the defendants are in violation of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and this court's September 30, 2005 order, requiring the defendants to comply with the IDEA by reimbursing aides and service providers.  The defendants request that the court set aside the September 30, 2005 order as to A.J.P. because post-judgment changes warrant such relief.  Because the court agrees that modification of the September 30, 2005 order is appropriate in this case, the court grants the defendants' motion and denies the plaintiff's motion for modification.  In addition, the court denies as moot the plaintiff's motions for contempt and for a TRO.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In August 2004, A.J.P.'s Individualized Education Plan ("IEP")[1] for the 2004-2005 school year stated that he should attend the "inclusion nursery school program" at Stoddert Elementary School.  Compl. ¶ 27.  Stoddert Elementary School, however, no longer offers an inclusion program, and on August 10, 2005, DCPS issued a new IEP, placing A.J.P. in the citywide autism program at Barnard Elementary School.  Compl. ¶ 30; Mem. Op. (Sept. 28, 2005) at 3.  That IEP also changed A.J.P.'s classification from "developmentally delayed" to "autistic."  Compl. ¶ 30.  Because Jackson disputes the new IEP's change in classification and the Barnard Elementary School placement, *id.* ¶ 32, she filed an administrative due process complaint on September 13, 2005, Mem. Op. (Sept. 28, 2005).

On September 28, 2005, the court granted the plaintiff's motion for a stay put injunction,[2] requiring DCPS to comply with "the mandates of the 2004-2005 school year IEPs."  Order (Sept. 26, 2005) at 1-2.  After a meeting between the parties and the court on September 29, 2005, the court issued an order requiring that DCPS:

> fund all related services and supplemental aids on the plaintiff A.J.P.'s April 9, 2004 Transition Plan and August 12, 2004 IEP, including speech therapy, occupational therapy, assistive technology, sign language instruction, behavioral management services and a full-time, one-on-one dedicated aide, *until the plaintiff's administrative due process complaint is decided and any appeal therefrom is concluded*. . . . [And DCPS] shall pay the identified aides and service providers, within 15 days of receipt from each aide of his or her weekly invoice.

---

[1]  A disabled child's Individualized Education Plan ("IEP") is a comprehensive educational plan designed at annual meetings by the parents or legal guardians, teachers, school district and other professionals (collectively, the "IEP team") tailored for each disabled child's needs.  20 U.S.C. § 1414(d).  The IEP "sets forth the child's educational level, performance, and goals and is the governing document for all educational decisions concerning the child."  *Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996).

[2]  A parent can invoke the stay put provision of the IDEA when the school system proposes "a fundamental change in, or elimination of, a basic element of the [then-current IEP]."  *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).

Order (Sept. 30, 2005) at 1-2 (emphasis added). In a Joint Report on the Status of Administrative Proceedings, the parties informed the court that as of February 6, 2006, DCPS had not yet held a dispute resolution meeting, Joint Status Report (Feb. 6, 2006) at 5-7, which is a prerequisite to a due process hearing, 20 U.S.C. § 1415(f)(1)(B)(i). To date, a dispute resolution meeting has still not been convened for the plaintiff's claims from the 2004 Transition Plan and the August 12, 2004 IEP. *See* Defs.' 60(b) Mot. at 6; Pl.'s 60(b) Opp'n at 1.

The court subsequently granted the defendants' motion to modify the September 30, 2005 order, allowing 30 days, as opposed to 15 days, to pay aides and service providers. Order (Oct. 10, 2006). In granting the defendants' request, the court recognized that Judge Friedman's Order Regarding Payment for Services to Class Members in *Petties v. District of Columbia*, No. 95-0148 (D.D.C. filed Nov. 8, 2004) (the "*Petties* order") applies to all vendors providing special education services to students in the DCPS system, including A.J.P. *Id.* The court reasoned that modification was appropriate to mirror the time provided in the *Petties* order. *Id.*

Over the last six months Jackson has filed three motions requesting that the court hold the defendants in contempt, set aside the October 10, 2006 order, modify the September 30, 2005 order and issue a TRO requiring the defendants to pay invoices submitted by one of A.J.P.'s aides. Pl.'s Contempt Mot.; Pl.'s 60(b) Mot.; Pl.'s Mot. for TRO. The defendants have responded to all of Jackson's motions and have also filed a motion of their own requesting modification of the September 30, 2005 order. All motions are now fully briefed.

## III.  ANALYSIS

### A.  Relief Under Federal Rule of Civil Procedure 60(b)

In its discretion, the court may relieve a party from an otherwise final judgment pursuant to any one of six reasons set forth in Rule 60(b).  FED. R. CIV. P. 60(b); *Lepkowski v. Dep't of Treasury*, 804 F.2d 1310, 1311-12 (D.C. Cir. 1986).  First, the court may grant relief from a judgment involving "mistake, inadvertence, surprise, or excusable neglect."  FED. R. CIV. P. 60(b).  Such relief under Rule 60(b) turns on equitable factors, notably whether any neglect was excusable.  *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd. P'ship*, 507 U.S. 380, 392 (1993).  Second, the court may grant relief where there is "newly discovered evidence" that the moving party could not have discovered through its exercise of due diligence.  FED. R. CIV. P. 60(b).  Third, the court may set aside a final judgment for fraud, misrepresentation, or other misconduct by an adverse party.  *Id.*; *Mayfair Extension, Inc. v. Magee*, 241 F.2d 453, 454 (D.C. Cir. 1957).  Specifically, the movant must show that "such 'fraud' prevented him from fully and fairly presenting his case," and that "the fraud is attributable to the party or, at least, to counsel." *Richardson v. Nat'l R.R. Passenger Corp.*, 150 F.R.D. 1, 7 (D.D.C. 1993) (Sporkin, J.) (citations omitted).  Fourth, the court may grant relief where the judgment is "void."  FED. R. CIV. P. 60(b).  A judgment may be void if the court lacked personal or subject-matter jurisdiction in the case, acted in a manner inconsistent with due process, or proceeded beyond the powers granted to it by law.  *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999).  Fifth, the court may grant relief if the "judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed . . . or it is no longer equitable that the judgment should have prospective application."  FED. R. CIV. P. 60(b); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (noting that not all judgments having

continuing consequences are "prospective" for the purposes of Rule 60(b)).  Sixth, the court may grant relief from a judgment for "any . . . reason justifying [such] relief."  FED. R. CIV. P. 60(b).  Using this final catch-all reason sparingly, courts apply it only in "extraordinary circumstances." *Pioneer Inv. Servs.*, 507 U.S. at 393.

A party proceeding under one of the first three reasons must file his Rule 60(b) motion within one year after the judgment at issue.  FED. R. CIV. P. 60(b).  A party relying on one of the remaining three reasons may file his Rule 60(b) motion within a reasonable time.  *Id.*  The party seeking relief from a judgment bears the burden of demonstrating that he satisfies the prerequisites for such relief.  *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002).

### B.  Modification of the Court's September 30, 2005 Order

The defendants contend that the court should modify its September 30, 2005 order because it is based on an outdated IEP and because the court did not intend for it to still be in effect.  Defs.' 60(b) Mot. at 6.  Furthermore, the defendants assert that continuing to operate under the 2004 IEP and the court's September 30, 2005 order does a disservice to A.J.P. because "DCPS does not know A.J.P.'s present level of academic achievement and developmental needs, or whether A.J.P. requires additional or modified services."  *Id.*

Jackson's arguments follow a different trajectory.  She alleges that the court's September 30, 2005 order remains in effect until the conclusion of administrative proceedings, which have not concluded because of the defendants' neglect.  Pl.'s 60(b) Opp'n at 2.  Jackson avers that the defendants have also failed to reevaluate A.J.P. in accordance with the IDEA.  *Id.* at 2-4 (stating that "Defendants did not make a request to evaluate Plaintiff A.J.P. in 2005, 2006, 2007 or 2008").  She then proposes that the defendants fund a reevaluation of A.J.P. by people of her

choosing and concludes that "[i]t is proper, until further notice by the Court, for all evaluations and IEP placement meetings to be convened and conducted by [A.J.P.'s] current private instructors or educational institution selecting [sic] by his parent and with his parent's participation at all meetings." *Id.* at 4-5.[3]

The IDEA requires the defendants to reevaluate each child with a disability "at least once every 3 years," 20 U.S.C. § 1414(a)(2)(B)(ii), but DCPS generally revises IEPs annually, Defs.' 60(b) Mot. at 5. In this case, it is undisputed that the 2004 IEP was created when A.J.P. was 3 years old, Defs.' 60(b) Mot. at 6, and the court's order was issued when A.J.P. was 4 years old, *id.* at 3. Although the court expected a reevaluation of A.J.P. to occur within 3 years of the 2004 IEP, when it issued the September 30, 2005 order, no such reevaluation has taken place and A.J.P. has not received an updated IEP. Defs.' 60(b) Mot. at 4-7; Pl.'s 60(b) Opp'n at 5. It remains unclear why the defendants have not reevaluated A.J.P. and updated his IEP,[4] just as it remains unclear why the defendants have not convened an administrative due process hearing,[5]

---

[3]  In her motion for relief from judgment, Jackson also alleges that the court's September 30, 2005 order and the *Petties* order "cannot coexist." Pl.'s 60(b) Mot. at 9. The court, in its October 10, 2006 order, recognized the application of the *Petties* order and modified the September 30, 2005 order to parallel deadlines set forth in the *Petties* order. Order (Oct. 10, 2006). Because the plaintiff fails to offer a convincing rationale explaining why the *Petties* order does not apply to A.J.P.'s service providers or why this court should set aside its October 10, 2006 order, the court rejects the plaintiff's contention that the two orders cannot coexist.

[4]  The defendants assert that Jackson has not allowed DCPS "to meet, observe and evaluate him," *id.* at 7, but Jackson retorts that the defendants have not made a request to evaluate A.J.P., Pl.'s 60(b) Opp'n at 5. The only record before the court indicates that on October 17, 2006, DCPS convened an IEP meeting, but Jackson did not participate in the hearing. Defs.' 60(b) Mot. at 4. As indicated in the meeting notes, Jackson's reasoning for not participating, at least in part, was her insistence that "the IEP developed in 2004 had to stand and did not allow for the 2005 IEP to be updated." *Id.*, Ex. 1 at 2. However, Jackson insists that the defendants refused to conduct an IEP meeting for A.J.P. Pl.'s 60(b) Mot. at 4.

[5]  The defendants maintain that the plaintiff's former attorney requested that the due process hearing be rescheduled so that a dispute resolution meeting could take place. Defs.' 60(b) Mot. at 4. Jackson "cannot confirm or deny" this allegation. Pl.'s 60(b) Opp'n at 2.

6

which the court specifically referenced in its September 30, 2005 order.[6]  Regardless of why these proceedings and reevaluations have not occurred, the court agrees with the defendants that the post-judgment changes, including the fact that A.J.P. is now 7 years old and the 2004 IEP is out of date, weigh in favor of setting aside the September 30, 2005 order.  *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 385 (1992) (holding that "[o]rdinarily . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered [an order]"); *Goland v. CIA*, 607 F.2d 339, 375 (D.C. Cir. 1978) (recognizing that "post-judgment change[s] in circumstances" present a ground for relief pursuant to Rule 60(b)).  Moreover, because the court has granted the plaintiff the relief sought in her complaint, Mem. Op. (July 25, 2006) at 5 (noting that "the plaintiff's motion for a stay put injunction is premised on the same allegations contained in the complaint"); Mem. Order (Nov. 6, 2006) at 4 (stating that the plaintiffs have "received all of their requested relief under the court's stay put order"), any further disputes should be resolved, as an initial matter, through the procedures outlined in the federal regulations, *see, e.g.*, 34 C.F.R. § 300.511.[7]  Finally, with the September 30, 2005 order set aside, the parties should work together to update A.J.P.'s IEP in accordance with the IDEA.

---

[6]  The court's order required payment for aides and service providers "until the plaintiff's administrative due process complaint is decided and any appeal therefrom is concluded."  Order (Sept. 30, 2005) at 2.

[7]  Jackson's motions for contempt and for a TRO assume that the court intended its September 30, 2005 order to remain in effect more than 3 years later.  It did not, as indicated by today's ruling, and the court, therefore, denies Jackson's motions as moot.  To the extent the motions involve contested payments arising on or before August 10, 2008 (3 years after the last IEP) the parties may re-submit their motions.  But the court strongly urges the parties to wait until the conclusion of the dispute resolution proceedings outlined in the *Petties* order before bringing similar claims before the court.

7

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for modification and denies the plaintiff's motion for modification.  Additionally, the court denies as moot the plaintiff's motions for contempt and for a TRO.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of January, 2009.

                                    RICARDO M. URBINA
                                    United States District Judge